**COMMISSIONER OF INTERNAL REVENUE**

v.

**STONE'S ESTATE et al.**

**No. 11132.**

United States Court of Appeals
Third Circuit.

Argued Jan. 5, 1954.

Decided Feb. 3, 1954.

Joseph F. Goetten, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Cecelia H. Goetz, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

John D. Ray, Beaver, Pa., John Cornell Hill, Pittsburgh, Pa. (Harold F. Reed, Reed, Ewing & Ray, Beaver, Pa., James D. Wills, Wills, Entwisle & Hill, Pittsburgh, Pa., on the brief), for respondents.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The question in this appeal from the Tax Court is whether the proceeds received from a sale of stock purchase warrants in 1948 are taxable as ordinary income or as a long term capital gain under section 117(a) (1, 4) I.R.C., 26 U.S.C.A.[1] The Tax Court decided that the transaction was governed by the capital gains provision, 19 T.C. 872, and the Commissioner appeals.

Lauson Stone was president of the Follansbee Steel Corporation, with a stipulated salary. In 1947, at a shareholders' meeting, a motion was passed authorizing the corporation to issue and sell to Mr. Stone 100 stock purchase warrants, each for 100 shares of the common stock of the corporation. Subsequently the Board of Directors approved the recommendation of the shareholders. The warrants were issued May 1, 1947. The taxpayer paid $1,000 for them. Under their

1. The party to the transaction in question was Lauson Stone. He has since died and is represented by his executors and his widow. For convenience we shall continue to refer to him as the taxpayer.

terms the price at which the warrants could be exercised was $21.00 a share. On May 1st, the day they were issued, the average market price of the stock on the New York Stock Exchange was $19.-75 per share. It will be observed that the price at which the taxpayer was given the right to buy the shares was more than their selling price on the day the warrants were issued to him. Nevertheless, he paid the corporation $1,000 for the warrants. And, evidently on the theory that the warrants were worth more than he paid for them, he paid income tax on $5,000 as "extra compensation" for the year 1947, representing his notion of the gain on the transaction for that year. At the hearing before the Tax Court evidence was introduced of the value of the warrants and the finding was made that: "The fair market value on May 1, 1947, of the warrant certificates purchased by the decedent was at least equal to the amount returned by the decedent as additional compensation in the year the warrants were issued, plus the amount paid for the certificates."

In 1948 the taxpayer sold 89 of the warrant certificates. He returned the rest to the corporation at the price he paid for them.[2]

The stipulated amount received from the sale of the warrant certificates by the taxpayer was $82,680.00. The sole question in the case is whether he is entitled to have the difference between their value when he got them and the price for which he sold them treated as a capital gain.

■■■ Authorities aside there would seem to be little trouble about this problem since the law does make a distinction between capital gain and ordinary income. When the taxpayer paid out $1,000 for these warrants he said that he was getting something that was worth at least $6,000. This was sustained by evidence which was offered to the Tax Court and which satisfied that body. In other

words, he was getting something of value at the time he got it. It should be added that the warrants were protected. They were exercisable by Lauson Stone or his assigns. The corporation agreed to treat as the absolute owner the person in whose name the warrant was issued or his assignee. There was no requirement that the holder be employed by the corporation. The holder of the warrants was fully protected from dilution of his rights by reason of an increase in the number of shares outstanding. It would seem, then, as a matter of principle that when the taxpayer received this thing of value in 1947 and turned it into cash in 1948 that, it being a "capital transaction,"[3] he should be treated as in any other capital transaction, and allowed to pay the appropriate tax thereon. It seems no different from buying and subsequently selling a piece of land, a horse or a Matisse painting.

This conclusion is supported by Treasury Regulations 111:

Sec. 29.22(a)–1—What Included in Gross Income (as amended April 12, 1946, T.D. 5507, 1946–1 C.B. 18)

"If property is transferred by an employer to an employee for an amount less than its fair market value, regardless of whether the transfer is in the form of a sale or exchange, the difference between the amount paid for the property and the amount of its fair market value is in the nature of compensation and shall be included in the gross income of the employee. In computing the gain or loss from the subsequent sale of such property, its basis shall be the amount paid for the property, increased by the amount of such difference included in gross income."

The attack made by the Commissioner on the Tax Court's conclusion rests on a ruling denominated as I.T. 3795 which, in turn, is supposed to be an interpretation of the T.D. 5507 just quoted. Ac-

---

2. The findings of fact state that he could not dispose of them because of certain prohibitions imposed by the Securities and Exchange Commission.

3. So found by the Tax Court.

cording to the Commissioner, I.T. 3795 is entitled to "the highest rank in the hierarchy of administrative interpretations." On the other hand, the taxpayer says that C.B. 1946–1 has the following cautionary note on its flyleaf:

"*Special Attention* is directed to the cautionary notice on this page that published rulings of the Bureau do not have the force and effect of Treasury Decisions, *and that they are applicable only to the facts presented in the published case*";

"Each ruling embodies the administrative application of the law and Treasury Decisions to the entire state of facts upon which a particular case rests. *It is especially to be noted that the same result will not necessarily be reached in another case unless all the material facts are identical with those in the reported case.*" (Emphasis supplied.)

An inspection of the volume shows that the taxpayer is right.

Regardless, however, of whether the ruling comes as a command from a five star general or a lieutenant colonel it provides what the Commissioner is urging as a mandate to us. Here is the pertinent language:

" * * * if an employee receives an option on or after February 26, 1945, to purchase stock of the employer corporation * * * and the employee exercises such option, the employee realizes taxable income by way of compensation on the date upon which he receives the stock to the extent of the difference between the fair market value of the stock when it is received and the price paid therefor.

"If the employee transfers such option for consideration in an arm's length transaction, the employee realizes taxable income by way of compensation on the date he receives such consideration to the extent of the value of such consideration." 1946–1 C.B. 16.

The date in the quoted language is significant because that was the day on which the Supreme Court decided Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830. The Smith case binds the Treasury as well as it binds us. The facts in that particular case are really quite different from those here. The option which the employer gave to the employee to purchase shares had no value at the time given. Indeed, the shares which the employee was to buy, if the option were exercised, had not yet been acquired by the promisor company. The Court said that the employee got compensation when he got something out of his option, i.e., when he got his shares. The Court also said on page 182 of 324 U.S., on page 593 of 65 S.Ct.: "It of course does not follow that in other circumstances not here present the option itself, rather than the proceeds of its exercise, could not be found to be the only intended compensation."

The Commissioner's argument disregards the statement just quoted as dictum and stands upon the sweeping language of the interpretation set out above. The Tax Court thought I.T. 3795 not applicable, that it was not "intended to cover stock warrants acquired by purchase, the fair market value of which on the date of delivery was in excess of the amount paid therefor."

It is very clear that the set of facts here involved differs greatly from the set of facts in Commissioner of Internal Revenue v. Smith, supra. Indeed it is the very situation which the Court in that case carefully distinguished.

The Tax Court concluded that the reasonable inference to be drawn from the facts in the case is that the parties were dealing in the stock warrants and not the stock which could be acquired thereunder. The Commissioner argues that the conclusion of the Tax Court is clearly erroneous and asks that we reverse it. It is true that the Tax Court does not line up all the considerations pointing to its conclusion, then line up all the considerations pointing the other way,

and evaluate each element. But we think its conclusion is a fair one from the testimony although there admittedly are some pieces of evidence which point the other way.

The decision of the Tax Court will be affirmed.