## PHILIP J. LOBUE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41595.   Filed May 28, 1954.

*Richard F. Barrett, Esq.*, for the petitioner.
*John E. Mahoney, Esq.*, for the respondent.

OPINION.

Rice, *Judge:* Petitioner argues that the stock options given to him in 1945, 1946, and 1947 were granted by the corporation for the purpose of providing him with a proprietary interest in the business, and were not intended as additional compensation to be received when he exercised them.

If the options were intended as additional compensation, the excess of the fair market value over the option price is taxable income to him when the option is exercised. *Commissioner* v. *Smith,* 324 U. S. 177 (1945). If the options were granted to provide him with a proprietary interest in the business, no taxable gain is recognized when the options are exercised. *Abraham Rosenberg,* 20 T. C. 5 (1953) ; *Norman G. Nicholson,* 13 T. C. 690 (1949). This is a question of fact. *Abraham Rosenberg, supra.* We have found that the stock options were granted to petitioner for the purpose of providing him with a proprietary interest in the business. We shall elaborate presently on our findings.

The respondent recognizes the factual nature of the question presented with respect to the option granted to petitioner in January 1945. He argues, however, with respect to the options granted in January 1946 and 1947, that T. D. 5507, 1946–1 C. B. 18, and I. T. 3795, 1946–1 C. B. 15, automatically require the excess of the fair market value of the stock over the option price paid for it to be taxed as compensation.

T. D. 5507, *supra,* provides that if property is transferred by an employer to an employee, for an amount less than its fair market value, the difference between the amount paid for the property and the amount of its fair market value is in the nature of compensation, and shall be included in the gross income of the employee.

I. T. 3795, *supra,* further provides that if an employee receives an option, on or after February 26, 1945, to purchase the stock of his employer corporation and the employee exercises that option, he realizes taxable income by way of compensation to the extent that the fair market value of the stock when received exceeds the option price paid for it.

In essence, respondent's argument with respect to the mandatory effect of T. D. 5507, *supra,* and I. T. 3795, *supra,* is to say that we

may not consider the factual question of whether the options granted to petitioner in 1946 and 1947 were or were not intended as compensation. In *Harley V. McNamara*, 19 T. C. 1001 (1953), reversed on other grounds 210 F. 2d 505 (C. A. 7, 1954), involving an option granted after February 26, 1945, we did consider the factual question whether the option was intended as compensation; but, since we determined that it was so intended, we found it unnecessary to consider whether T. D. 5507, *supra*, and I. T. 3795, *supra*, were justified by *Commissioner* v. *Smith*, *supra*, or were otherwise valid.

The Commissioner promulgated the rulings in question on the assumption that the *Smith* case held that any economic or financial benefit conferred on an employee was compensation, regardless of the form or mode by which the benefit was conferred. The *Smith* case does not so hold. Therein the Supreme Court upheld a finding of fact by this Court that a stock option was intended as additional compensation and in doing so stated, page 181:

Section 22 (a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected. * * *

This language does not support the Commissioner's amendment to the regulations that any stock option granted to an employee after February 26, 1945, results in taxable compensation, when exercised, to the extent that the fair market value of the stock at that time exceeds the option price paid.[1]

Determination of whether a stock option is granted to an employee as additional compensation, or to give him a proprietary interest in the corporation, thus remains a question of fact. In reaching that conclusion, we think the criteria set forth by this Court in *Delbert B. Geeseman*, 38 B. T. A. 258 (1938), are still the most reliable guide to be followed. In the *Geeseman* case, we said, at page 264:

as a prerequisite to the conclusion sought by the respondent it should definitely and clearly appear that a transaction, which in form is nothing more than a purchase and to an obvious and substantial extent is unquestionably a purchase,

---

[1] In considering the Revenue Act of 1950, Congress established a new set of rules for the tax treatment of certain employees stock options. In doing so, it recognized that such options were frequently used as an incentive device by corporations who wished to attract new management, to convert officers into "partners" by giving them a stake in the business, and generally to give their employees a more direct interest in the success of the corporation. It realized that the regulations here in question often worked a real hardship on employees when stock options were exercised, since an immediate sale of a portion of the stock was necessary frequently to pay the tax; and that when such a sale was necessary, it reduced the effectiveness of the option as an incentive device. In its report on the Revenue Act of 1950, the Senate Finance Committee stated:

At the present time the taxation of these options is governed by regulations which impede the use of the employee stock option for incentive purposes. Moreover, your committee believes these regulations go beyond the decision of the Supreme Court in *Commissioner* v. *Smith*, 324 U. S. 177 (1945). * * * [S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), p. 59.]

is in fact to some extent the payment of compensation for services rendered or to be rendered.

Here it "definitely and clearly" appears that the granting of the options to petitioner in 1945, 1946, and 1947 was not intended as additional compensation for his services.

The essential purpose of the corporation's action in initially authorizing the allocation of 10,000 shares to be sold to employees, as indicated by the vice president's letter of June 29, 1944, and as amplified by his testimony at the trial, was to provide the key employees with an incentive to promote the growth of the company by permitting them to participate in its success. The annual report of the corporation for the year ended December 31, 1947, emphasizes the growth in the number of shareholders after the employee-purchase option plan was adopted. In the 4-year period, 1944 to 1947, inclusive, the number of shareholders more than doubled.

The vice president's and president's letters to petitioner, notifying him of the granting of the stock options, emphasized the corporation's problems and encouraged his cooperation and help in their solution. The tenor of these letters bespeaks appeal to a proprietary interest in the corporation's welfare and growth rather than to a mere employee's interest.

The fact that the purchase price initially specified by the directors in granting the option rights slightly exceeded the then fair market value of the stock negates the idea that the rights were authorized with compensation in mind.

We observed in *Delbert B. Geeseman, supra,* page 263, that in practically all such cases as the one before us, both the element of additional compensation and the granting of a proprietary interest are present. We said, however, that decision would be impossible "if the absence of one or the other is essential thereto."

The respondent attaches considerable significance to the fact that the corporation, in 1946 and 1947, claimed a deduction on its income tax returns for the difference in the fair market value and the option price at which the stock was purchased by the employees in those years. The corporation did not claim a deduction in 1945, but did in 1946 and 1947. We do not think the deductions in the latter years are binding on petitioner, and do not change the essential purpose which motivated the granting of the option rights. *Abraham Rosenberg, supra; Estate of Lauson Stone,* 19 T. C. 872 (1953), affd. 210 F. 2d 33 (C. A. 3, 1954) ; and *Delbert B. Geeseman, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Van Fossan, Murdock, Harron, and Raum, *JJ.,* dissent.