# COMMISSIONER OF INTERNAL REVENUE v. LoBUE.

No. 373.   Argued March 6, 1956.—Decided May 28, 1956.

*Philip Elman* argued the cause for petitioner. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Holland, Acting Assistant Attorney General Rice, Hilbert P. Zarky* and *Joseph F. Goetten.*

*Richard F. Barrett* argued the cause for respondent. With him on the brief was *Melville F. Weston.*

MR. JUSTICE BLACK delivered the opinion of the Court.

This case involves the federal income tax liability of respondent LoBue for the years 1946 and 1947. From 1941 to 1947 LoBue was manager of the New York Sales Division of the Michigan Chemical Corporation, a producer and distributor of chemical supplies. In 1944 the company adopted a stock option plan making 10,000 shares of its common stock available for distribution to key employees at $5 per share over a 3-year period. LoBue and a number of other employees were notified that they had been tentatively chosen to be recipients of nontransferable stock options contingent upon their continued employment. LoBue's notice told him: "You may be assigned a greater or less amount of stock based entirely upon your individual results and that of the entire organization." About 6 months later he was notified that he had been definitely awarded an option to buy 150 shares of stock in recognition of his "contribution and efforts in making the operation of the Company successful." As to future allotments he was told "It is up to you to justify your participation in the plan during the next two years."

LoBue's work was so satisfactory that the company in the course of 3 years delivered to him 3 stock options covering 340 shares. He exercised all these $5 per share options in 1946 and in 1947,[1] paying the company only $1,700 for stock having a market value when delivered of $9,930. Thus, at the end of these transactions, LoBue's employer was worth $8,230 less to its stockholders and LoBue was worth $8,230 more than before.[2] The company deducted this sum as an expense in its 1946 and 1947 tax returns but LoBue did not report any part of it as income. Viewing the gain to LoBue as compensation for personal services the Commissioner levied a deficiency assessment against him, relying on § 22 (a) of the Internal Revenue Code of 1939, 53 Stat. 9, as amended, 53 Stat. 574, which defines gross income as including "gains, profits, and income derived from . . . compensation for personal service . . . of whatever kind and in whatever form paid . . . ."

LoBue petitioned the Tax Court to redetermine the deficiency, urging that "The said options were not intended by the Corporation or the petitioner to constitute additional compensation but were granted to permit the petitioner to acquire a proprietary interest in the Corporation and to provide him with the interest in the successful operation of the Corporation deriving from an ownership interest." The Tax Court held that LoBue had a taxable gain if the options were intended as compensation but not if the options were designed to provide him with "a proprietary interest in the business." Finding after hearings

---

[1] There may be some question as to whether the first option was exercised in 1945 or 1946. See the discussion, *infra,* as to when the transactions were completed.

[2] The Commissioner assessed a deficiency on the basis of $8,680 although the record figures show a difference between option price and market value of $8,230. No explanation for the discrepancy appears in the record.

that the options were granted to give LoBue "a proprietary interest in the corporation, and not as compensation for services" the Tax Court held for LoBue. 22 T. C. 440, 443. Relying on this finding the Court of Appeals affirmed, saying: "This was a factual issue which it was the peculiar responsibility of the Tax Court to resolve. From our examination of the evidence we cannot say that its finding was clearly erroneous." 223 F. 2d 367, 371. Disputes over the taxability of stock option transactions such as this are longstanding.[3] We granted certiorari to consider whether the Tax Court and the Court of Appeals had given § 22 (a) too narrow an interpretation. 350 U. S. 893.

We have repeatedly held that in defining "gross income" as broadly as it did in § 22 (a) Congress intended to "tax all gains except those specifically exempted." See, e. g., Commissioner v. Glenshaw Glass Co., 348 U. S. 426, 429–430. The only exemption Congress provided from this very comprehensive definition of taxable income that could possibly have application here is the gift exemption of § 22 (b)(3). But there was not the slightest indication of the kind of detached and disinterested generosity which might evidence a "gift" in the statutory sense. These transfers of stock bore none of the earmarks of a gift. They were made by a company engaged in operating a business for profit, and the Tax Court found that the stock option plan was designed to achieve more profitable operations by providing the employees "with an incentive to promote the growth of the company by permitting them to participate in its success." 22 T. C., at 445.

_____

[3] See, e. g., Durkee v. Welch, 49 F. 2d 339; Erskine v. Commissioner, 26 B. T. A. 147; Geeseman v. Commissioner, 38 B. T. A. 258; Evans v. Commissioner, 38 B. T. A. 1406. See also Miller, The Treasury's Proposal to Tax Employee's Bargain Purchases, 56 Yale L. J. 706; Note, 64 Yale L. J. 269; 93 Cong. Rec. A4060–A4066; Surrey and Warren, Federal Income Taxation (1955 ed.), 653–674.

Under these circumstances the Tax Court and the Court of Appeals properly refrained from treating this transfer as a gift. The company was not giving something away for nothing.[4]

Since the employer's transfer of stock to its employee LoBue for much less than the stock's value was not a gift, it seems impossible to say that it was not compensation. The Tax Court held there was no taxable income, however, on the ground that one purpose of the employer was to confer a "proprietary interest." [5] But there is not a word in § 22 (a) which indicates that its broad coverage should be narrowed because of an employer's intention to enlist more efficient service from his employees by making them part proprietors of his business. In our view there is no statutory basis for the test established by the courts below. When assets are transferred by an employer to an employee to secure better services they are plainly compensation. It makes no difference that the compensation is paid in stock rather than in money. Section 22 (a) taxes income derived from compensation "in whatever form paid." And in another stock option case we said that § 22 (a) "is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected." *Commissioner* v. *Smith,* 324 U. S. 177, 181. LoBue received a very substantial economic and financial benefit from his employer prompted by the employer's desire to get better work from him. This is "compensation for personal service" within the meaning of § 22 (a).

---

[4] *Robertson* v. *United States,* 343 U. S. 711, 713–714; *Bogardus* v. *Commissioner,* 302 U. S. 34.

[5] The Tax Court noted "that in practically all such cases as the one before us, both the element of additional compensation and the granting of a proprietary interest are present." 22 T. C., at 445. See also *Geeseman* v. *Commissioner,* 38 B. T. A. 258, 263.

LoBue nonetheless argues that we should treat this transaction as a mere purchase of a proprietary interest on which no taxable gain was "realized" in the year of purchase. It is true that our taxing system has ordinarily treated an arm's length purchase of property even at a bargain price as giving rise to no taxable gain in the year of purchase. See *Palmer* v. *Commissioner,* 302 U. S. 63, 69. But that is not to say that when a transfer which is in reality compensation is given the form of a purchase the Government cannot tax the gain under § 22 (a). The transaction here was unlike a mere purchase. It was not an arm's length transaction between strangers. Instead it was an arrangement by which an employer transferred valuable property to his employees in recognition of their services. We hold that LoBue realized taxable gain when he purchased the stock.[6]

A question remains as to the time when the gain on the shares should be measured. LoBue gave his employer promissory notes for the option price of the first 300 shares but the shares were not delivered until the notes were paid in cash.[7] The market value of the shares was lower when the notes were given than when the cash was paid. The Commissioner measured the taxable gain by the market value of the shares when the cash was paid. LoBue contends that this was wrong, and that the gain

---

[6] Since our view of the statute requires taxation of gain here it is unnecessary for us to rely on the Treasury Regulations to reach that conclusion. Apparently the present regulations were not applicable to all of the options. See 26 CFR, Rev. 1953, § 39.22 (a)–1 (c) ; 1939–1 Cum. Bull. 159; 1946–1 Cum. Bull. 15–18. And since the transactions in question here occurred prior to 1950 the 1950 statute establishing special tax treatment for "restricted stock option plans" has no relevance. See § 130A, Internal Revenue Code of 1939, as amended, 64 Stat. 942. And see § 421, Internal Revenue Code of 1954, 68A Stat. 142.

[7] LoBue paid cash for the last 40 shares.

should be measured either when the options were granted or when the notes were given.

It is of course possible for the recipient of a stock option to realize an immediate taxable gain. See *Commissioner v. Smith,* 324 U. S. 177, 181–182. The option might have a readily ascertainable market value and the recipient might be free to sell his option. But this is not such a case. These three options were not transferable [8] and LoBue's right to buy stock under them was contingent upon his remaining an employee of the company until they were exercised. Moreover, the uniform Treasury practice since 1923 has been to measure the compensation to employees given stock options subject to contingencies of this sort by the difference between the option price and the market value of the shares at the time the option is exercised.[9] We relied in part upon this practice in *Commissioner* v. *Smith,* 324 U. S. 177, 324 U. S. 695. And in its 1950 Act affording limited tax benefits for "restricted stock option plans" Congress adopted the same kind of standard for measurement of gains. § 130A, Internal Revenue Code of 1939, as amended, 64 Stat. 942. And see § 421, Internal Revenue Code of 1954, 68A Stat. 142. Under these circumstances there is no reason for departing from the Treasury practice. The taxable gain to LoBue should be measured as of the time the options were exercised and not the time they were granted.

---

[8] Cf. *McNamara* v. *Commissioner,* 210 F. 2d 505.

[9] See 1923 II–1 Cum. Bull. 50; 1939–1 Cum. Bull. 159; 1946–1 Cum. Bull. 15–18; Dillavou, Employee Stock Options, 20 Accounting Review 320; Miller, The Treasury's Proposal to Tax Employee's Bargain Purchases, 56 Yale L. J. 706, 713–715. See also Note, The Valuation of Option Stock Subject to Repurchase Options and Restraints on Sale, 62 Yale L. J. 832; Note, Tax Effects of Absence of Market Value on Employee Bargain Purchases, 21 U. of Chi. L. Rev. 464.

It is possible that a bona fide delivery of a binding promissory note could mark the completion of the stock purchase and that gain should be measured as of that date. Since neither the Tax Court nor the Court of Appeals passed on this question the judgment is reversed and the case is remanded to the Court of Appeals with instructions to remand the case to the Tax Court for further proceedings.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE CLARK, concurring.

We join in the judgment of the Court and in its opinion on the main issue. However, the time when LoBue acquired the interest on which he is taxed was not in issue either before the Tax Court or the Court of Appeals. In the circumstances of this case, there certainly is no reason for departing from the general rule whereby this Court abstains from passing on such an issue in a tax case when raised here for the first time. See *Helvering* v. *Minnesota Tea Co.,* 296 U. S. 378, 380; *Helvering* v. *Tex-Penn Co.,* 300 U. S. 481, 498.

MR. JUSTICE HARLAN, whom MR. JUSTICE BURTON joins, concurring in part and dissenting in part.

In my view, the taxable event was the grant of each option, not its exercise. When the respondent received an unconditional option to buy stock at less than the market price, he received an asset of substantial and immediately realizable value, at least equal to the then-existing spread between the option price and the market price. It was at that time that the corporation conferred a benefit upon him. At the exercise of the option, the corporation "gave" the respondent nothing; it simply satisfied a previously-created legal obligation. That trans-

action, by which the respondent merely converted his asset from an option into stock, should be of no consequence for tax purposes. The option should be taxable as income when given, and any subsequent gain through appreciation of the stock, whether realized by sale of the option, if transferable, or by sale of the stock acquired by its exercise, is attributable to the sale of a capital asset and, if the other requirements are satisfied, should be taxed as a capital gain.[1] Any other result makes the division of the total gains between ordinary income (compensation) and capital gain (sale of an asset) dependent solely upon the fortuitous circumstance of when the employee exercises his option.[2]

---

[1] *Commissioner* v. *Smith*, 324 U. S. 177, 324 U. S. 695, does not require an opposite result. In that case Smith's employer, Western, had undertaken the management of a reorganized corporation, Hawley, under a contract by which Western was to receive as compensation for its managerial services a specified amount of stock in Hawley if it was successful in reducing Hawley's indebtedness by a stated amount. Western, in turn, gave Smith, who was active in the Hawley reorganization, an option to buy, at the then-existing market price, a fixed share of any Hawley stock received under the management contract. The management contract was successfully performed, and a part of the Hawley stock received by Western—the value of which was of course substantially enhanced by the performance of the contract—was sold to Smith at the option price. Under the peculiar facts of that case—more analogous to an assignment to an employee of a share in the anticipated proceeds of a contract than to the usual employee stock option plan—the Tax Court's finding that the gain that would accrue to Smith upon the successful performance of the management contract was intended as "compensation" to him for his services was no doubt amply justified. But as the Court expressly stated in upholding that finding: "It of course does not follow that in other circumstances not here present the option itself, rather than the proceeds of its exercise, could not be found to be the only intended compensation." *Id.*, at p. 182.

[2] Suppose two employees are given unconditional options to buy stock at $5, the current market value. The first exercises the option immediately and sells the stock a year later at $15. The second

The last two options granted to respondent were unconditional and immediately exercisable, and thus present no further problems. The first option, however, was granted under somewhat different circumstances. Respondent was notified in January 1945 that 150 shares had been "allotted" to him, but he was given no right to purchase them until June 30, 1945, and his right to do so then was expressly made contingent upon his still being employed at that date. His right to purchase the first allotment of stock was thus not vested until he satisfied the stated condition, and it was not until then that he could be said to have received income, the measure of which should be the value of the option on that date.

Accordingly, while I concur in the reversal of the judgment below and in the remand to the Tax Court, I would hold the granting of the options to be the taxable events and would measure the income by the value of the options when granted.

---

holds the option for a year, exercises it, and sells the stock immediately at $15. Admittedly the $10 gain would be taxed to the first as capital gain; under the Court's view, it would be taxed to the second as ordinary income because it is "compensation" for services. I fail to see how the gain can be any more "compensation" to one than it is to the other.