**UNION CHEMICAL & MATERIALS CORP.**

v.

**UNITED STATES.**

No. 76–57.

United States Court of Claims.

Nov. 1, 1961.

Aaron Lewittes, New York City, for plaintiff. T. Roland Berner and Julian S. Bush, New York City, on the briefs.

Harold S. Larsen, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Lyle M. Turner, Washington, D. C., on the brief.

LARAMORE, Judge.

This is an action for refund of Federal corporate income tax for the calendar year 1948. The taxpaper is the successor in interest to the rights and liabilities of Follansbee Steel Corporation by virtue of a merger with that company on December 23, 1954.

In the years immediately succeeding World War II, Follansbee experienced an expanded sales position which resulted in increased profits and a general improvement in the financial condition of the company. It was felt by some of the stockholders that this improved financial situation was due, at least in part, to the efforts of their president, Lauson Stone. At the annual stockholders' meeting held on March 27, 1947, a stockholder proposed a resolution to recommend to the directors that such action be taken as would be necessary to authorize the corporation to issue and sell to Lauson Stone stock purchase warrants for the purchase of Follansbee common stock.

On May 1, 1947, pursuant to the above resolution, 100 warrant certificates, each certificate evidencing the right to purchase 100 shares of common stock (a total of 10,000 shares) were issued and sold to Lauson Stone for the sum of $1,000. These warrants were dated May 1, 1947, and were exercisable at any time after October 31, 1947, and before May 1, 1952, at $21 per share. The average market price of the stock on the New York Stock Exchange on May 1, 1947, was $19.75 per share. For income tax purposes in 1947, Lauson Stone valued the warrants at $6,000 and considered the difference between this price and the $1,000 he paid for them, as additional compensation of $5,000 on which he paid ordinary income tax. In that same year, Follansbee in its income tax return deducted as compensation paid to Lauson Stone, in addition to the salary paid to him, the sum of $5,000 representing the difference between $6,000 (the fair market value assigned to the warrants by

Lauson Stone) and the $1,000 he paid the corporation for such warrants. In 1948, Lauson Stone disposed of 89 warrant certificates representing the right to purchase 8,900 shares of Follansbee stock for which he received the sum of $82,680.[1] Follansbee recorded the transaction in its journal for June 1948, showing a receipt of $186,000 cash; i. e., 8,900 shares at the option price of $21 per share, and an "administrative expense" in the amount of $87,175 representing the excess of market value of the stock over the option price. The company in its income tax return for the year 1948 deducted this "administrative expense" as additional compensation paid to Stone.

The sole issue in this action is whether taxpayer is entitled to this deduction. This, in turn, depends upon whether or not the item in dispute qualifies as a deduction under applicable provisions of the Internal Revenue Code of 1939 and valid Treasury Regulations promulgated pursuant thereto.

The Internal Revenue Code of 1939, 26 U.S.C. (1946 Ed.), which was in effect at that time, states:

"§ 23.   Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general.

"All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

Therefore, taxpayer must show that it compensated an employee for services rendered in order to qualify for the deduction of an ordinary and necessary business expense. This implicitly, at least, requires a determination that the employee received compensation.

Treasury Regulations 111, applicable to this issue, states:

"§ 29.22(a)–1 What included in Gross Income.—Gross income includes in general compensation for personal and professional services, business income, profits from * * any source whatever, unless exempt from tax by law. * * *"

Section 29.22(a)–1, supra, as amended by T.D. 5507, 1946–1 Cum.Bull. 18, states:

"If property is transferred by an employer to an employee for an amount less than its fair market value, regardless of whether the transfer is in the form of a sale or exchange, the difference between the amount paid for the property and the amount of its fair market value is in the nature of compensation and shall be included in the gross income of the employee. * * *"

I.T. 3795 (1946–1 Cum.Bull. 15, 16) states as interpretive of T.D. 5507, the following:

" * * * if an employee receives an option on or after February 26, 1945, to purchase stock of the employer corporation, or of an affiliate of the employer corporation as set forth in section 141(d) of the Internal Revenue Code [26 U.S.C. § 141(d)], and the employee exercises such option, the employee realizes taxable income by way of compensation on the date upon which he receives the stock to the extent of the difference between the fair market value of the stock when it is received and the price paid therefor.

"If the employee transfers such option for consideration in an arm's length transaction, the employee realizes taxable income by way of compensation on the date he receives

---

[1]. Lauson Stone returned 11 warrants to the corporation at the price he paid for them because of certain prohibitions imposed by the Securities and Exchange Commission.

such consideration to the extent of the value of such consideration.

\*   \*   \*   \*   \*   \*

"No deduction is allowed to the employee by reason of the lapse of such option except to the extent of any consideration in money or property previously paid by the employee for the option and not recovered by him, such unrecovered consideration being deductible, pursuant to section 23(e) of the Internal Revenue Code, in the year in which the option expires.

"If such option is granted to the employee by the employer corporation, the amount of compensation realized by the employee under the foregoing principles is deductible by the employer corporation, in the year in which the employee realizes such compensation, to the extent set forth in section 23(a) (1) of the Internal Revenue Code."

It is noteworthy that the date mentioned in I.T. 3795 is February 26, 1945. For it was on that date the Supreme Court rendered its decision in Commissioner v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830. That case involved an issue similar to the one presented in the instant case. In relying on Treasury Regulations 101, Art. 22(a)–1, which uses substantially the same language as Treasury Regulations 111, set out above, the court stated at page 181, 65 S.Ct. at page 593:

"Section 22(a) of the Revenue Act is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 [49 S.Ct. 499, 73 L.Ed. 918]. The regulation specifically includes in income, property 'transferred \* \* \* by an employer to an employee, for an amount substantially less than its fair market value,' even though the transfer takes the form of a sale or exchange, to the extent that the employee receives compensation."

The Court recognized that in some instances an option may be "property" in the hands of the option holder and that the option itself found to be the compensation given. But the Court held that:

"\* \* \* It could do so only as it might be the means of securing the transfer of the shares of stock from the employer to the employee at a price less than their market value, or possibly, which we do not decide, as the option might be sold when that disparity in value existed." (p. 181, 65 S.Ct. at p. 593.)

Thereafter, the Commissioner took the position that Commissioner v. Smith, supra, and the regulations following that decision compel the conclusion that taxable income results whenever a stock option given by a corporation to an employee is exercised at an option price less than fair market value. There are at least two notable instances where the United States Court of Appeals refused to uphold that position of the Commissioner. Both these instances were cases decided by the Third Circuit, and we believe they are indistinguishable from the instant case. The first case is Commissioner v. Stone's Estate, 3 Cir., 210 F.2d 33 (1954), appealed from 19 T.C. 872, which involved a determination of the same warrants as were issued to Lauson Stone in the instant case. In the Tax Court, it was determined that the stock warrants in issue on the date of their delivery to Mr. Stone had a fair market value of at least $6,000 and since this was in excess of the price paid for the option it could be treated as though the option itself were the only compensation intended. However, the Tax Court specifically left unanswered the question whether the action by the corporation in taking a deduction in 1948 was proper, but it would appear to be logical, as the defendant contends, that if no compensation was paid then no deduction can be taken. At any rate, the present defendant lost in the Tax Court, and the deci-

sion was affirmed by the Third Circuit. It is interesting to note that the position taken by the defendant in the Tax Court, and the Court of Appeals, is diametrically opposed to the argument it is urging in the instant case. In affirming the Tax Court, the Court of Appeals distinguished the Smith case, supra, on factual grounds. If the Stone case were our only authority, we would in deference to the Third Circuit necessarily either follow that determination or reach the wholly illogical conclusion that a deduction should be permitted where no expense by way of compensation had been incurred. We need not make such a determination because the Third Circuit again had occasion to examine this issue in Commissioner v. LoBue, 223 F.2d 367 (1955). While affirming LoBue, 22 T.C. 440, the Court of Appeals pointed out at page 368 of 223 F.2d:

> "A virtually unbroken line of cases supports the Tax Court in holding that if the grant of a stock option by a corporation to its employee is intended as additional compensation to him the excess of the fair market value over the option price is income taxable to him when the option is exercised, but on the other hand if the grant of the option is intended to provide him with a proprietary interest in the business no taxable gain is recognized when the option is exercised, whether the grant of the option is the one or the other being in every case a question of fact."

The court in that case based its decision on a distinction between "a proprietary interest in the corporation" and compensation for services. They held that this was a factual question and that the Tax Court was not clearly erroneous in holding that the options were granted to give the employee a proprietary interest. The Commissioner strenuously protested this interpretation and petitioned the Supreme Court for a writ of certiorari. The Commissioner prevailed upon the Supreme Court to reverse the Court of Appeals, which they did in Commissioner v. LoBue, 351 U.S. 243, 76 S. Ct. 800, 100 L.Ed. 1142 (1956). After being successful in the Supreme Court, the defendant comes into this court and argues against the result it fought so hard to obtain in Commissioner v. LoBue, supra. We cannot reconcile the different positions taken by the defendant, and we feel, as indeed we are, bound by the decision of the Supreme Court in the LoBue case.

In striking down the distinction between "proprietary interest" and compensation paid for services, the Court said, at page 247, 76 S.Ct. at page 803:

> " * * * The Tax Court held there was no taxable income, however, on the ground that one purpose of the employer was to confer a 'proprietary interest.' But there is not a word in § 22(a) which indicates that its broad coverage should be narrowed because of an employer's intention to enlist more efficient service from his employees by making them part proprietors of his business. In our view there is no statutory basis for the test established by the courts below. When assets are transferred by an employer to an employee to secure better services they are plainly compensation."

This is in keeping with the Court's interpretation of section 22(a), 26 U.S.C.A. § 22(a), that Congress intended to tax all gains except those specifically exempted. There is no contention by either party in the instant case that the options were granted as a gift. Indeed, both parties treated them as compensation paid for services; therefore, the only real issue is when should recognition of the value of the warrants take place. In 1947, there was a value placed on the options of "at least $6,000," and this was found as a fact by the Tax Court. In 1948, Lauson Stone derived $82,680 from the sale of the warrants. Therefore, we must determine whether the taxpayer is entitled to a deduction for compensation paid, measured by the value of the options when given in 1947, or when

exercised in 1948. We feel the solution to this problem is furnished by the Lo-Bue decision, supra, at page 249, 76 S.Ct. at page 804:

"It is of course possible for the recipient of a stock option to realize an immediate taxable gain. See Commissioner v. Smith, 324 U.S. 177, 181–182 [65 S.Ct. 591, 89 L. Ed. 830]. The option might have a readily ascertainable market value and the recipient might be free to sell his option. But this is not such a case. These three options were not transferable and LoBue's right to buy stock under them was contingent upon his remaining an employee of the company until they were exercised. Moreover, the uniform Treasury practice since 1923 has been to measure the compensation to employees given stock options subject to contingencies of this sort by the difference between the option price and the market value of the shares at the time the option is exercised. We relied in part upon this practice in Commissioner v. Smith, 324 U.S. 177 [65 S.Ct. 591, 89 L.Ed. 830]; Id., 324 U.S. 695 [65 S.Ct. 891, 89 L.Ed. 1295]. And in its 1950 Act affording limited tax benefits for 'restricted stock option plans' Congress adopted the same kind of standard for measurement of gains. § 130A, Internal Revenue Code of 1939, as amended, 64 Stat. 942. And see § 421, Internal Revenue Code of 1954, 68A Stat. 142. Under these circumstances there is no reason for departing from the Treasury practice. The taxable gain to LoBue should be measured as of the time the options were exercised and not the time they were granted."

Applying the rule laid down in the LoBue case to the facts in the instant case, we are faced with the question whether or not the options, at the time they were granted, had a readily ascertainable market value. The Tax Court found that they had a value of at least $6,000, but they decided it was not necessary to determine the actual fair market value of the warrants on the date they were granted. However, there was evidence introduced by two experienced stock brokers that the warrants were worth around $30,000 to $35,000. Is this what is meant by a readily ascertainable market value? On the day that the warrants were issued the stock was selling for approximately $19.75 per share. The option price was $21 per share. If the holder of the warrants had exercised his rights immediately he would have been able to pay $1.25 more per share under the warrants than if he bought the shares on the open market. How valuable then was that privilege? Certainly it was worth something, but exactly how much no one could ascertain. Therefore, the stock options did not have a readily ascertainable market value, and under the rule in LoBue, supra, the value of the options should be measured as of the time the options were exercised and not at the time they were granted. Hence, when Lauson Stone disposed of his option and received $82,680 the corporation was worth that amount less to its stockholders than it would have been had it sold the shares on the open market. Plaintiff is entitled to a deduction of that amount, less $890 as the cost of the options and less $5,000 which it deducted in 1947 as compensation for services rendered under section 23 of the Internal Revenue Code of 1939, making the amount of the deduction which should be granted $76,790.

Therefore, the plaintiff is entitled to recover a refund based on a deduction of $76,790, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and DURFEE and WHITAKER, Judges, concur.