Walter J. Hegedus and Charlotte C. Hegedus v. Commissioner.
Hegedus v. Commissioner
Docket No. 3762-63.
United States Tax Court
T.C. Memo 1965-11; 1965 Tax Ct. Memo LEXIS 319; 24 T.C.M. (CCH) 50; T.C.M. (RIA) 65011; January 27, 1965
Walter J. Hegedus, pro se. James M. Carter and Gary L. Stansbery, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioners for the year 1960 in the amount of $671.99. The only issue presented is whether the amount of $2,640.08 received by petitioner, Walter J. Hegedus, from his employer, Farrel-Birmingham Company, Inc., as reimbursement for certain expenses incurred by him when he was transferred by his employer from *320 Akron to Pittsburgh, constituted taxable income or a gift. Respondent's determination increased petitioners' adjusted gross income, thus resulting in a decrease of allowable medical expense. Findings of Fact Some of the facts have been stipulated by the parties and are so found. Walter J. Hegedus and Charlotte C. Hegedus are husband and wife, who now reside at 30 Park Road, Pittsford, New York. They filed their joint Federal income tax return for the calendar year 1960 with the district director of internal revenue, Pittsburgh, Pennsylvania. Prior to and during the year 1960, Walter J. Hegedus (hereafter called petitioner) was employed by the Farrel-Birmingham Company, Inc. (hereafter called Farrel). Petitioner and his family resided during part of 1959, and for several years prior thereto, at Lyndhurst, Ohio. Petitioner was employed in the Akron, Ohio, office of Farrel as a sales engineer. During 1959 petitioner was transferred by Farrel to Pittsburgh, Pennsylvania. The transfer was for the convenience of Farrel. All direct costs, i.e., moving and transportation expenses, incurred by petitioner in connection with this move were paid by Farrel. On August 26, 1959, petitioners *321 purchased a residence at 4179 Timberland Drive, Allison Park, Pennsylvania. They sold their Lyndhurst, Ohio, house on October 11, 1959. The sale of the Lyndhurst house resulted in a gain of $3,643 which petitioners reported in their 1959 Federal income tax return. They did not include the gain in taxable income but reduced the basis of the Allison Park house by such amount. The computations are reflected in their 1959 tax return. Farrel has a company policy relating to reimbursement of relocation costs to its employees when they are transferred from one location to another. This policy became effective on January 1, 1960, and was not retroactive. In transferring an employee for the convenience of the company, Farrel pays relocation costs in addition to the direct costs for moving and transportation. These relocation expenses are set out in the Sales Manual of Farrel, as follows. e. Specific expenses in connection with the sale of the employee's home and including only items of: (1) Real estate broker's fee not exceeding the standard rate effective in the area. (To be approved in advance if rate exceeds 5%). (2) Local, state and federal real estate transfer taxes. (3) Contractual *322 penalties invoked by mortgagor because of prepayment of mortgage balance to the extent, as determined by the Company, that such penalties are reasonable and unavoidable. (4) Cost of notary and recording fees required of seller. (5) Attorney's fee (if any) for closing. The above expenses to be paid only if the home is sold within six months. This period may be extended if approved in advance by the Salary Committee. f. Specific expenses in connection with the purchase by a home owner of a home at the new location not to exceed $300 and including only items of: (1) Title search, (2) Title insurance, or (3) Legal costs only, however, if such purchase is made within one year from the date of transfer. g. A transferred employee may be renting at his present location and the cancellation of his lease may be an additional expense to him. The employee will be reimbursed for such an additional expense up to the equivalent of 2 months' rent. h. The Company will reimburse nonexempt salaried employees for miscellaneous expenses such as refitting carpeting, drapes, etc. incurred in connection with the transfer of the employee by the Company from one location to another but such *323 reimbursement shall not be in excess of two weeks' basic salary or $300, whichever is greater. In the case of exempt salaried personnel reimbursement shall not be in excess of one-half a month's salary or $300, whichever is greater. This expense reimbursement shall be made only to employees who now have fully furnished apartments or homes and who reestablish themselves on a similar basis in the new location. In March 1960 petitioner furnished Farrel with a statement showing his loss of equity ($4,130) on his 1959 move from Akron to Pittsburgh. Later in 1960 petitioner received $2,640.08 from Farrel, which was shown on the corporate books as follows: Broker's commission, taxes and mis-
cellaneous transfer fees in connec-
tion with the sale of the Ohio prop-
erty
$1,227.30
Survey appraisal and legal fees, and
taxes in connection with the pur-
chase of Pennsylvania property
607.89
Interest on interim note
198.55
Portion of taxes and utilities for two
months
138.00
Allowance for one-half month's salary
468.34
Total
$2,640.08
Petitioner did not report any part of the $2,640.08 received from Farrel in his gross income for the taxable year 1960. In his *324 notice of deficiency dated May 1, 1963, respondent included the $2,640.08 in petitioner's gross income for 1960. Opinion It is respondent's position that the $2,640.08 received by petitioner from his employer as reimbursement for certain relocation costs should be taxed as ordinary income under section 61(a), Internal Revenue Code of 1954, which defines gross income as "all income from whatever source derived." To the contrary, petitioner contends that such amount constitutes a gift and, pursuant to section 102(a), should be excluded from his gross income. Generally, where there is an employee-employer relationship, amounts received by the employee are presumed to have been in return for services and not gifts. Cf. Willkie v. Commissioner, 127 F. 2d 953 (C.A. 6, 1942), certiorari denied 317 U.S. 659; L. Gordon Walker, 25 T.C. 832 (1956); and Ruth Jackson, 25 T.C. 1106 (1956). This is especially true unless it can be shown that the employer intended to confer a gift upon the employee. The mere fact that the payment was voluntary does not establish it as a gift. Donative intent is the criterion. And in *325 determining such intent, consideration must be given to the corporation's characterization of the act, the treatment of the item on its books and its tax return, and the surrounding circumstances. This record is devoid of any evidence showing that Farrel intended to make a gift of the amount in question to the petitioner, [1] who was the only witness. We cannot impute to Farrel, even from the goodness of its corporate heart, an intent to make a gift under these circumstances. Petitioner impressed us as an intelligent, dynamic sales engineer, who is probably a real asset to the company. It is reasonable to assume that Farrel paid the money to petitioner as an incentive in the hope of retaining his services and of continuing to obtain productive work from him. In our opinion this payment constituted an economic benefit to petitioner arising out of his employment and, as such, should be treated as compensation. See Harris W. Bradley, 39 T.C. 652 (1963), affd. 324 F. 2d 610 (C.A. 4, 1963); Commissioner v. LoBue, 351 U.S. 243 (1956); and Commissioner v. Duberstein, 363 U.S. 278 (1960). While this result may seem unfortunate to petitioner, *326 a person of obvious candor and sincerity, we must take the record and the law as we find them. Accordingly. Decision will be entered for the respondent. Footnotes
1. Illustrative is the following colloquy between the Court and petitioner: THE COURT: If you were, let's say, getting ready to leave the company at that point, would they have given it to you anyway, paid this amount to you, or was it only being paid to you because you were being retained in the employ of the company? MR. HEGEDUS: Well, I couldn't speak for them. I mean I have no idea what the reasoning behind it was. THE COURT: Well, you see, this is one of the difficulties you have in trying to establish your contention that this is a gift. * * * It is company's intent that is of primary importance.↩