T.C. Summary Opinion 2015-66

UNITED STATES TAX COURT

JOHN EDWIN TROUT AND BARBARA ALMA TROUT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10576-13S.                    Filed November 19, 2015.

John Edwin Trout and Barbara Alma Trout, pro se.

Britton G. Wilson, for respondent.

SUMMARY OPINION

PARIS, Judge:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code), as amended and in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $6,497 in petitioners' Federal income tax for 2009. The issue before the Court is whether petitioners are eligible for the New Qualified Plug-in Electric Drive Motor Vehicle tax credit (PEVC) of $6,497 under section 30D for 2009. The notice of deficiency did not determine a penalty.

Background

This case was submitted on the pleadings and stipulated facts under Rule 122. The stipulation of facts, the supplemental stipulation of facts, the second supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Nebraska when they petitioned the Court.

The electric vehicle at issue, a Spark NEV-48 EX, was manufactured by Zone Electric Car, LLC (Zone Electric). Pursuant to Notice 2009-54, 2009-26 I.R.B. 1124 (June 29, 2009), Zone Electric submitted a request on October 1, 2009, to the Internal Revenue Service (IRS) to certify that its electric vehicles were qualified plug-in electric vehicles for purposes of section 30D, which as of the date of the notice allowed a tax credit for qualified plug-in electric vehicles

placed in service from January 1 to December 31, 2009.  On October 7, 2009, the IRS issued a letter to Zone Electric stating that the Spark NEV-48 EX model "meets the requirements of the Qualified Plug-in Electric Vehicle Credit as a Qualified Plug-in Vehicle.  This acknowledgment is valid only through December 31, 2009, at which time the vehicle will need to be re-submitted under the revised provisions of IRC 30D and any subsequent Notice covering that period."  The letter goes on to state that "purchasers of this Qualified Plug-in Electric Vehicle may rely on the certification concerning the vehicle's qualification for the Qualified Plug-in Vehicle Credit."

On December 29, 2009, petitioners ordered an electric vehicle described as a Spark NEV-48 EX from Drive Electric, LLC (Drive Electric), through the company's Web site FreeElectricCar.com.  Petitioners remitted full payment of $7,229.53 (including shipping) during the transaction and received an email confirmation of the order.  Drive Electric provided petitioners with a certificate of origin and a bill of sale, both of which were dated December 29, 2009.  The bill of sale describes a conveyance of the Spark NEV-48 EX model electric vehicle which has a unique vehicle identification number (VIN).  The bill of sale also purports to transfer title to the specifically identified vehicle "as evidenced by the accompanying Manufacturer's Statement of Origin."  The certificate of origin also

contains the date of the transaction and the VIN. The certificate of origin is signed by Zone Electric.

In addition, petitioners were provided with the terms and conditions of sale when they ordered the vehicle. Pursuant to the terms and conditions, Drive Electric would place the vehicle order with the appropriate manufacturer upon receipt of funds from the buyer. Specifically, the document stated that "upon receipt of Buyer's funds, the Vehicle manufacturer shall schedule the production of the Vehicle and shall issue the vin# [sic] and [Manufacturer's Statement of Origin] * * * for the scheduled vehicle." In pertinent part, the terms and conditions stated that the buyer and the seller agreed that title to the vehicle would pass to the buyer upon issuance of the Manufacturer's Statement of Origin (certificate of origin), "notwithstanding later productions, assembly or physical shipment of the vehicle to the Buyer." The document further stated that the buyer acknowledged that the certificate of origin is issued at the time the vehicle is ordered and in advance of vehicle production.

Petitioners timely filed their Federal income tax return for 2009, which claimed a PEVC of $6,497. On August 26, 2010, petitioners received their electric vehicle with a matching VIN; and they subsequently submitted a golf cart permit application to their local authorities, who issued a permit. On July 25,

2013, respondent issued a notice of deficiency determining a deficiency of $6,497, the amount claimed as a PEVC.

## Discussion

### I. Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct and the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to determining the tax liability of the taxpayer. This section becomes applicable only if the taxpayer produces credible evidence at trial. Higbee v. Commissioner, 116 T.C. 438, 444 (2001). Petitioners have not argued that section 7491(a) applies and have not shown that they meet the requirements to shift the burden of proof; therefore, the burden of proof remains with petitioners.

### II. Section 30D

The PEVC was originally enacted in the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, div. B, sec. 205, 122 Stat. 3765, 3835 (Oct. 3, 2008), and effective for tax years beginning after December 31, 2008. Under section 30D(a)(1), a taxpayer is allowed a one-time credit against income tax with

respect to each new qualified plug-in electric drive motor vehicle placed in service during the taxable year.

Section 30D(a)(1) as signed into law on October 3, 2008, was amended on February 17, 2009. The American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, sec. 1141(a)-(c), 123 Stat. 115, 326-328, amended section 30D(d)(1) to define a "new qualified plug-in electric drive motor vehicle" more narrowly for tax years after December 31, 2009, to exclude low-speed vehicles, such as those primarily for use on golf courses, as they would no longer constitute qualified motor vehicles for purposes of the PEVC. Notice 2009-89, 2009-48 I.R.B. 714 (Nov. 30, 2009).

After December 31, 2009, the definition of qualified motor vehicles would effectively exclude low-speed vehicles from eligibility for a PEVC. As a result, a taxpayer who intended to claim a PEVC for a low-speed electric vehicle must have been in compliance with the provisions of section 30D on or before December 31, 2009.

Petitioners timely filed their 2009 tax return, in which they claimed a PEVC of $6,497 on the basis of their purchase of a low-speed electric vehicle. On December 29, 2009, petitioners paid Drive Electric in full for a low-speed electric vehicle. Drive Electric then issued the certificate of origin and the title document

with a unique VIN. Ultimately, a vehicle with the matching VIN was delivered on August 26, 2010. There is no dispute that Drive Electric's model Spark NEV-48 EX is a low-speed electric vehicle and, for purposes of section 30D, would not qualify under the more narrow definition to be applied after December 31, 2009.

Section 30D(a)(1) as effective on the date of petitioners' purchases provides that low-speed vehicles can qualify for the PEVC when the vehicle is: (1) placed in service by the taxpayer in a taxable year beginning after December 31, 2008 (the enactment of the statute); (2) acquired by the taxpayer on or before December 31, 2009 (before the amendment of the statute took effect); and (3) generally in compliance with the requirements of section 30D. Notice 2009-89, supra.

Respondent argues that petitioners are not eligible for a PEVC for 2009 because the qualified vehicle was not placed in service on or before December 31, 2009, or before the credit termination took effect. Respondent asserts that the vehicle was placed in service when it was delivered in 2010. Consequently, respondent argues petitioners are not eligible for a PEVC for 2009.

Petitioners argue they remitted payment and acquired title to a qualified electric vehicle on December 29, 2009. Petitioners assert that legal title passed to them on the date they entered into the purchase agreement and therefore they are entitled to a PEVC for 2009 because the vehicle was acquired before December

31, 2009. However, the statute effective on the date of purchase also required a qualified motor vehicle to be placed in service on or before December 31, 2009. Thus, the statutory requirements are twofold: (1) petitioners had to acquire title to the vehicle after December 31, 2008, and (2) place it in service on or before December 31, 2009. Petitioners are entitled to a PEVC for 2009 if they met these requirements.

Section 30D(1)(a) allows a credit against tax for qualified property for the taxable year in which such property is placed in service. "Neither the [C]ode nor the regulations provide a general definition for a term that each uses many times regarding property: 'placed in service'". Jasper L. Cummings, "When Is Property Placed in Service?", 149 Tax Notes 409 (2015). "The de facto general definition is the earlier of readiness for use for its intended purpose or actual regular use for that intended purpose. But piecing together the de facto definition is far harder than it ought to be". Id.; e.g., Rev. Proc. 2007-65, 2007-2 C.B. 967 ("placed in service" not defined for section 45, but the depreciation and investment credit definition is adopted without question); see IRS Publication 946, How to Depreciate Property 7 (Feb. 27, 2015).

Although "placed in service" is not explicitly defined for purposes of section 30D, other sections of the Code provide guidance. Section 38(a) provides

a business credit against tax with respect to property in the first taxable year in which qualified property is placed in service by the taxpayer. See also sec. 1.46-3(d)(4)(i), Income Tax Regs. Property will be considered placed in service when it is in a condition or state of readiness and availability for a specifically assigned function. Id. subpara. (1)(ii); see also Consumers Power Co. v. Commissioner, 89 T.C. 710 (1987) (referring to investment credit for purposes of section 38(a)).

There are other tests in the regulations which have been used to determine when a vehicle has been placed in service. Section 1.150-2(c), Income Tax Regs., for purposes of tax-exempt bonds defines placed in service as "the date on which, based on all the facts and circumstances--(1) The facility has reached a degree of completion which would permit its operation at substantially its design level; and (2) The facility is, in fact, in operation at such level." Section 1.1250-4(b)(2), Income Tax Regs., provides that property is placed in service on the date of first use, regardless of when depreciation starts. Finally, section 145.4051-1(c)(2), Excise Tax Regs., states that the placed-in-service date for the tax on heavy trucks and trailers is the date when the owner takes possession of the vehicle.

The Court will look at whether the vehicle was "in a condition or state of readiness and availability" for the "specifically assigned function" for which

petitioners purchased it to determine when petitioners placed the Spark NEV-48 EX in service. See sec. 1.46-3(d)(1)(ii), Income Tax Regs.

This Court has held that the asset is considered to be "placed in service" only when the asset is in a state of readiness and available for full service. Noell v. Commissioner, 66 T.C. 718, 728-729 (1976). In Noell, the taxpayer built an airport runway which was fully completed in late 1968. Id. at 721. Construction of the runway required the taxpayer to grade the land, supply a rock base, lay down asphalt payment, and plant sod. Id. Before the surface was completed, pilots occasionally used the runway to land and take off in 1967 despite the risk of damage to the plane from using an unpaved runway. Id. The incomplete and rough surface made the runway unsatisfactory for permanent use and available only in good weather. Id. The taxpayer contended that the runway construction was not complete until 1968, and so the investment credit for the runway should be taken for his 1968 taxable year. Id. at 728-729. The Commissioner objected on the grounds that because pilots began to use the runway in 1967, the runway was placed in service that year. Id. Despite even occasional use, the Court concluded that the runway was not placed in service until it was in a state of readiness for full service of its specifically assigned function in 1968. Id. at 729.

Caselaw requires that the Court determine more specifically whether the asset in question was ready and available for full operation on a regular basis for its specifically assigned function. See Consumers Power Co. v. Commissioner, 89 T.C. 710; Brown v. Commissioner, T.C. Memo. 2013-275. The Court determined the placed-in-service date for a hydroelectric utility plant was deferred until the plant was available for full operation on a regular basis. Consumers Power Co. v. Commissioner, 89 T.C. 710. The Court determined a depreciation deduction for the hydroelectric plant was not allowed for the year it first generated electric power during preoperational testing because the plant was not available for full operation on a regular basis until the following year. Id. at 724. The Court noted that responsibility and control of the plant remained with the contractor during the preoperational testing and the taxpayer did not formally accept the plant until the following year. Id. Ultimately, the placed-in-service date of property is when it is in a state of readiness and availability for full service of its specifically assigned function. Id.

As previously discussed, the terms and conditions expressly stated that the vehicle order would be submitted to the manufacturer after payment was received by Drive Electric. Although the actual date of production is unknown, petitioners received the finished vehicle on August 26, 2010. Consequently, the Court must

find that the vehicle was not ready and available for full service to petitioners until August 26, 2010. Because the vehicle was not placed in service in 2009, petitioners are not eligible for a PEVC for that year.[2]

The Court has considered all of the arguments made by the parties and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[2]The American Recovery and Reinvestment Tax Act of 2009, Pub. L. No. 111-5, sec. 1141(a), 123 Stat. at 326, amending sec. 30D modified the plug-in electric drive motor vehicle credit. The modification created a new credit against tax for qualified motor vehicles "acquired after the date of the enactment of this Act". Id. sec. 1142(a)-(c), 123 Stat. at 328-331. The enactment took place on February 17, 2009. Id. Thus, the new credit against tax applies to qualified motor vehicles placed in service after February 17, 2009, and before January 1, 2012. Id. The amount of the credit is 10% of the cost of the vehicle, up to a maximum credit of $2,500. Id. To qualify, a vehicle must either be a low-speed vehicle propelled to a significant extent by a rechargeable battery with a capacity of at least four kilowatt hours or be a two- or three-wheeled vehicle propelled to a significant extent by a rechargeable battery with a capacity of at least 2.5 kilowatt hours. Id. 123 Stat. at 329. This credit was available to petitioners for the tax year in which the qualified motor vehicle was placed in service, which was tax year 2010. The Court does not have jurisdiction of petitioners' tax year 2010.