A. J. OSTHEIMER, 3rd, Ruth M.
Ostheimer, Appellants,

v.

UNITED STATES of America.

No. 12626.

United States Court of Appeals
Third Circuit.

Argued Nov. 6, 1958.

Decided March 9, 1959.

Rehearing Denied March 31, 1959.

Bernard V. Lentz, Philadelphia, Pa. (Mervin M. Wilf, Herbert W. Reisner, Philadelphia, Pa., on the brief), for appellants.

Myron C. Baum, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Loring W. Post, Thomas N. Chambers, Attorneys, Department of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Are commissions received by a life insurance agent on premiums which he paid on policies he had placed on the lives of his partner, key employees and children, "gross income" under Section 22(a) of the Internal Revenue Code of 1939? [1]

That is the single question presented by this appeal from the judgment of the District Court [2] which answered it affirmatively, in rejection of the contention that the commissions were merely a reduction of the cost of the policies.

The facts, critical to this appeal, may be summarized as follows:

During 1947, 1948, and 1949, the tax years here involved, A. J. Ostheimer, 3rd ("taxpayer") [3] conducted a business as a life insurance agent. During the first seven months of 1947, the business was conducted in partnership with one Earl Zebley, and thereafter as a sole proprietorship.

Taxpayer, during the years stated, was licensed to act as a life insurance agent in Pennsylvania for eleven life insurance companies. Among them were the Northwestern Mutual Life Insurance Company of Milwaukee, Wisconsin ("Northwestern"), of which he was a "Special Agent", and the Aetna Life Insurance Company ("Aetna").

Under his contracts with these insurance companies, the taxpayer was to receive commission on all life insurance business he wrote for them. By the contracts, as well as by Pennsylvania statutes,[4] the companies and their agents

---

1. 26 U.S.C.1952 ed., Sec. 22.

2. The opinion of the District Court is reported at E.D.Pa.1958, 160 F.Supp. 669.

3. Since a joint tax return was filed by taxpayer and his wife, Ruth M. Ostheimer, she is a party plaintiff.

4. The Act of May 17, 1921, P.L. 789, Art. VI, §§ 635-636, 40 P.S. §§ 275-276

(Purdon 1954) provides that an insurance agent may not rebate any part of an insurance premium or his commission thereon; the Act of May 17, 1921, P.L. 682, Art. III, Sec. 346, 40 P.S. § 471 (Purdon 1954) provides that insurance companies are prohibited from offering or making rebates on insurance premiums.

were required to sell insurance at fixed prices without rebate of premiums or commissions.

During the taxable years involved, taxpayer was the owner and beneficiary of life insurance policies which he had purchased on the lives of his business partner, Zebley and three of his key employees. Four of his children also owned policies issued on their lives which were purchased by taxpayer and given to them. All but one of the policies were issued by Northwestern, the remaining one was issued by Aetna.

Taxpayer personally, and through his secretary, prepared the applications for the policies on which he was designated as agent. From the dates of their issuance, including the taxable years involved, he paid the standard premiums on all the policies, by checks drawn on his personal bank account. The policies and premium payments were processed by the general agents of Northwestern and Aetna in the same manner as other policies and premiums. The general agents periodically submitted "Commission Statements" to taxpayer and these statements covered all amounts due him from time to time, and were accompanied by checks for the total amount then due, including among others the regular commissions on the policies here involved.

Taxpayer was a "Special Agent" of Northwestern and an "authorized agent" for Aetna. As "Special Agent" taxpayer was not required to spend a fixed amount of time for Northwestern. He was obligated to give Northwestern a right of first refusal on policies of the type issued by it. His agency contract specifically provided that it did not create an employer-employee relationship.

Taxpayer (and his wife) did not include in their gross income on their tax returns any of the amounts equal to contractual commissions on the policies involved. It may be noted, parenthetically, that taxpayer deducted as necessary and ordinary business expenses the nominal expenses incident to the policies agreed to be in the amount of $5.00 per annum.

The Commissioner determined that the commissions received by taxpayer on these policies should properly have been included in the taxable years at issue and accordingly assessed deficiencies. The District Court, as stated, sustained the Commissioner's determination.

Here, as below, taxpayer urges that his commissions merely effectuated a reduction of his cost in purchasing and maintaining the policies and consequently did not constitute "income". He says he merely acted as his own middleman and thereby obtained the middleman's benefit, viz., the commissions, enabling him to obtain the insurance "at a net price" or "wholesale".

Otherwise stated, taxpayer's contention is that the commissions he received on the premiums he paid were simply his "discount", and "discount" he says, is not income.

In reply, the government contends (1) the facts do not establish a bargain purchase of insurance since taxpayer paid the gross price required by law to be charged all insurance purchasers; and (2) even if a bargain purchase could be established by viewing the commissions as a reduction of purchase price, taxpayer secured a benefit by virtue of his employment relationship, not otherwise available to the public, which is clearly taxable as income.

■ We are in agreement with the government's view that the facts do not establish a bargain purchase so that consideration of its second contention is unnecessary.

We are further of the opinion that the commissions received by taxpayer on the policies here involved are well within the definition of "gross income" as stated in Section 22(a) of the Internal Revenue Code of 1939, and the specific language of Section 29.22(a)–2 Treasury Regulations 111 and Treasury rulings later discussed.

"Gross income", under the "General Definition" in Section 22(a) "includes gains, profits, and income derived from salaries, wages, or compensation for per-

sonal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales * * * and income derived from any source whatever".

The Treasury Regulations cited, under the caption "Compensation for Personal Services" provide:

"Commissions paid salesmen, compensation for services on the basis of a percentage of profits, *commissions on insurance * * ** are income to the recipients * * **." (Emphasis supplied.)

Applicable to the instant appeal are these well- settled principles:

" * * * in defining 'gross income' as broadly as it did in § 22(a) Congress intended to 'tax all gains except those specifically exempted.' ".[5]

"The broad sweep of this language [Section 22(a)] indicates the purpose of Congress to use the *full measure of its taxing power* within those definable categories * * * Hence our construction of the statute should be consonant with that purpose. Technical considerations * * * or the legal paraphernalia which inventive genius may construct * * * should not obscure the basic issue." [6] (Emphasis supplied.)

"Where the payment is in return for services rendered * * *" such payment is gross income under Section 22(a).[7]

In the instant case the life insurance companies paid taxpayer commissions on the premiums as compensation for his services in placing the policies involved.

The payments were in discharge of the contractual obligation of the insurance companies to pay taxpayer commissions on all premiums paid on policies which he wrote. In other words, the commissions were a "payment in return for services rendered", and as such constituted "gross income."

The payments were not "rebates" to taxpayer by the insurance companies, because, as earlier pointed out, Pennsylvania statutes prohibit the companies from making rebates on insurance premiums. The insurance companies were required by Pennsylvania statute to sell insurance to the public at fixed or uniform rates and taxpayer as a licensed insurance agent was likewise required by statute and by contract to sell at the fixed rates and not to rebate his commission.

Taxpayer, as required by Pennsylvania law and the provisions of the policies, paid the gross premiums on the policies to the insurance companies, and in usual course in accordance with his agency contracts, received the standard commissions on the premiums. Had taxpayer not been the agent who placed the policies he would not, and could not, have received the commissions on the premiums. It was only in his capacity as agent that he was paid these commissions.

The mere circumstance that taxpayer paid the premiums out of his own funds had no bearing on the nature of the commissions received by him on these premiums.

The circumstance that the commissions operated to reduce the out-of-pocket premium outlays could not operate to make the policy purchases and maintenance "discount" transactions.

5. Commissioner of Internal Revenue v. Lo Bue, 1956, 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 1142, rehearing denied 352 U.S. 859, 77 S.Ct. 21, 1 L.Ed.2d 69, citing Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 429–430, 75 S.Ct. 473, 99 L.Ed. 483, rehearing denied 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256.

6. Helvering v. Clifford, 1940, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788. See also Commissioner of Internal Revenue v. Glenshaw Glass Co., note 5 supra.

7. Robertson v. United States, 1952, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L. Ed. 1237; Teleservice Co. of Wyoming Valley v. Commissioner, 3 Cir., 1958, 254 F.2d 105, 112, certiorari denied 1958, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364.

In its dealings with taxpayer the insurance companies dealt with him solely as an agent and not as a "customer" or "middleman". Neither as "customer" or "middleman" could they have given him a "discount" because such a "discount" would have been a proscribed "rebate".

The cases cited by taxpayer are inapposite. Take for example, Benjamin v. Hoey, 2 Cir., 1944, 139 F.2d 945. There the taxpayer was a 38% partner in a stock brokerage firm. He purchased and sold securities through the firm for his personal account and paid to it the usual brokerage commissions on his transactions. Both the District Court[8] and the Court of Appeals held that the taxpayer's share of his own commissions was not taxable income. The holding was premised on the fact that "what one pays to one's self cannot be part of one's income." 139 F.2d at page 946. With respect to the holding in the Benjamin case it need only be said that it is distinguishable on its facts. There the taxpayer paid his share of the commissions to himself while in the instant case he paid the premiums not to himself but to the insurance companies. Here, taxpayer and the insurance companies were separate entities. There was no partnership relationship between them, only a contractual principal-agent relationship.

Taxpayer has called our attention to Kenneth W. Daehler, 31 T.C. ——. There it was held (five judges dissenting) that the amount refunded to a real estate salesman by his employer as salesman's share of commission on a house the salesman himself bought constitutes a reduction of the price paid for the house rather than taxable income. With respect to this case we need but say that we do not subscribe to its holding. As the dissenting judges pointed out, the salesman's commission was "an employee's commission paid to him for personal services rendered by him to such [his] employer" and, "This compensa-

tion for services rendered, definitely constituted gross income under Section 22 (a) of the 1939 Code."

There remains only this to be said.

■ The District Court in its opinion, 160 F.Supp. 669 stated:

"The Internal Revenue Department ruled in 1915 (T.D. 2137, 17 Treasury Decisions 48) that 'A commission retained by a life insurance agent on his own life insurance policy is held to be income accruing to the agent, and should be included in his return of income for the assessment of the income tax.' This ruling was reaffirmed in 1932[9] and again in 1955.[10] Obviously, the ruling would be the same as to commissions on policies on the lives of an agent's children, his employees and his business partner.

"An administrative interpretation such as this, so consistently followed over such a long period of time, is entitled to great weight with the Court and there is a heavy burden upon the plaintiff to show that it is erroneous."

We subscribe to the District Court's statement.

■ Administrative interpretations are of great persuasion in deciding an issue of statutory construction. See Saunders v. Commissioner, 3 Cir., 1954, 215 F.2d 768.

Taxpayer contends that he was an independent contractor.

As to this contention it need only be said that the contracts between taxpayer and the insurance companies are forms of employment. The record discloses in fact that Northwestern paid social security taxes with respect to taxpayer's services.

Independent of what has been said, taxpayer certainly had no possible basis for his contention that he was acting as "middleman" with respect to the premi-

8. Reported at S.D.N.Y.1942, 47 F.Supp. 158.

9. G.C.M. 10486, X1–1 Cum.Bull. 14 (1932).

10. Rev.Rul. 55–273, 1955–1 Cum.Bull. 221.

ums paid on the policies owned by his children. The premium payments which he made on his children's policies were "gifts" to the children, nothing more, nothing less. The fact that his commissions operated to reduce the cost of his gifts did not change the character of the commissions as compensation to him for his services as agent.

For the reasons stated the judgment of the District Court will be affirmed.