CLARENCE R. WILLIAMS AND MARY J. WILLIAMS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70187. Filed January 31, 1961.

*George C. Kennedy, Esq.,* for the petitioners.
*Wallace M. Wright, Esq.,* for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1955 in the amount of $465.23. The sole issue is whether payments received by petitioner Clarence R. Williams from the Brotherhood's Relief and Compensation Fund in 1955 in excess of dues he paid to the fund constitute taxable income to petitioners in 1955.

The facts were fully stipulated.

Petitioners are husband and wife residing in Manchester, Georgia. They filed their joint income tax return for the year 1955 with the district director of internal revenue, Atlanta, Georgia. Clarence R. Williams was an employee of the Atlantic Coast Line Railroad Company in 1954 and 1955.

The Brotherhood's Relief and Compensation Fund, hereafter referred to as the fund, is a nonprofit corporation incorporated under the laws of Pennsylvania. The object of the fund is the maintenance of a society for beneficial and protective purposes for its members who are eligible for benefits for "held out of service" or "retirement" as defined in the constitution of the fund. Membership in the fund is limited to employees of motive power and transportation departments of transportation companies and there are four classes of membership. A member is required to pay monthly dues to the fund from which benefits are paid to qualifying members. Dues and the benefits to be paid to qualifying members vary with the class of membership. Only members contribute to the fund.

Clarence was issued a membership certificate in the fund effective as of May 14, 1951, and he paid monthly dues pursuant to the terms of his membership certificate through 1955. These dues from May 1951 through 1955 totaled $224. None of these dues were deducted on any income tax return filed by petitioners for the years 1951 to 1955, inclusive. Clarence's payment of dues to the fund was separate and distinct from any union dues and was entirely voluntary.

A member of the fund is eligible for "held-out-of-service" benefits if he is relieved by his employer from the performance of his usual duties as a disciplinary measure, or if he is permanently injured in a specified manner in an accident while performing the duties of his employment. Lump-sum retirement benefits are paid to members attaining age 70 according to a schedule based on years of continuous membership.

In 1955 Clarence was eligible for benefits resulting from his "held-out-of-service" classification, and he was paid the amount of $2,400 by the fund in that year. Petitioners did not report these payments as gross income on their income tax return for that year. Respondent included the entire amount in petitioners' gross income in 1955 but agreed by stipulation that the amount to be included should be reduced by the $224 contributed by Clarence to the fund as dues.

Petitioners contend that the certificate of membership is similar to unemployment or health insurance and that benefits paid thereunder are not "earned income" nor taxable as ordinary income. They argue that had Clarence been eligible for "held-out-of-service" benefits by reason of permanent injuries, the payments from the fund would be excluded from gross income. They cite no authorities in support of their contentions.

In support of his determination respondent relies on the broad and inclusive terms of section 61(a), I.R.C. 1954, which provides:

SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

The Supreme Court, in *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426, made it clear that Congress, in defining gross income, intended to exert "the full measure of its taxing power" and "applied no limitations as to the source of taxable receipts, nor restrictive labels as to their nature," and pointed out that the Court "has given a liberal construction to this broad phraseology [1] in recognition of the inten-

---

[1] The Court was referring to section 22(a), I.R.C. 1939, the predecessor of section 61(a), I.R.C. 1954, but pointed out that in the 1954 Code "The definition of gross income has been simplified, but no effect upon its present broad scope was intended." See also *United States* v. *Woodall*, 255 F. 2d 370 (C.A. 10, 1958); *Irving Sachs*, 32 T.C. 815, affd. 277 F. 2d 879 (C.A. 8, 1960), certiorari denied 364 U.S. 833.

tion of Congress to tax all gains except those specifically exempted." The Court also said that the characterization of income in *Eisner* v. *Macomber*, 252 U.S. 189, as "the gain derived from capital, from labor, or from both combined" is not a definitive answer to all questions regarding gross income. According to the Court in the *Glenshaw* opinion, if there is an undeniable accession to wealth, clearly recognized, and over which the taxpayers have "complete dominion," such gain is gross income to the taxpayers, absent a showing that Congress intended to except the amount from the "pervasive coverage" of the provisions defining gross income.

There is no question in this case that Clarence, by virtue of the benefit payments received, realized an "accession to wealth" over which he had "complete dominion." The *Glenshaw* case would seem to be dispositive of this case unless it can be shown that the payments fall within the purview of some provision of the Code or of law excepting, exempting, or excluding them from gross income.

Petitioners argue that the payments are not taxable because Clarence performed no services for them and they are not earned income. Petitioners cite no authority excepting or exempting income not "earned" from gross income per se, and we know of none. The "windfall" consisting of punitive damages under the antitrust laws involved in the *Glenshaw* case, and the "insider profits" recovered by a corporation from one of its directors involved in *Gen. Investors Co.* v. *Commissioner*, 348 U.S. 434, were not "earned" by the taxpayers, nor were services rendered nor capital invested in order to receive them, but they were both held to be gross income.

Petitioners also argue that these payments were in the nature of unemployment insurance and therefore not taxable, but cite no authority for this contention. Respondent has long held that unemployment payments from private, as opposed to public or general welfare, funds are gross income to the recipient, and cites Rev. Rul. 57–383, 1957–2 C.B. 44, and Rev. Rul. 59–5, 1959–1 C.B. 12, in support of his position here.[2] On authority of *Glenshaw* and absent any showing that payments in the nature of unemployment insurance are by any provision of law specifically excepted from gross income, we consider this argument without merit with respect to the "held-out-of-service" benefit payments here involved. Cf. *Commissioner* v. *LoBue*, 351 U.S. 243; *Ostheimer* v. *United States*, 264 F. 2d 789 (C.A. 3, 1959); *Teleservice Co. of Wyoming Valley*, 27 T.C. 722, affd. 254 F. 2d 105 (C.A. 3, 1958), certiorari denied 357 U.S. 919. Petitioners' suggestion that these payments were similar to health and accident

---

[2] Petitioners do not rely on the points discussed by Mr. Justice Frankfurter in his concurring opinion in *United States* v. *Kaiser*, 363 U.S. 299, 305, and we do not believe it is necessary or proper for us to discuss them in this opinion.

insurance is ineffectual because there is no evidence that these payments were made because of any injury or illness suffered by Clarence.

Petitioners do not argue that these payments are excludible from gross income because they are gifts or payments to replace the loss of capital or anything having the characteristics of capital, and we see no basis for such argument. The payments were made to Clarence under a contractual arrangement whereunder he made specified contributions to a fund out of which he was entitled to receive specified benefits upon qualification therefor under the terms of the contract. The payments were not gratuitous, nor, to the extent they exceeded his contributions, were they a repayment of his capital, but were to replace in part his loss of wages which would have been taxable as ordinary income to him had he received them.

The taxability of "held-out-of-service" benefits paid from this same fund under similar circumstances was recently considered by the United States District Court of Idaho, Eastern Division, in *Johnson* v. *Wright*, 175 F. Supp. 215. We agree with the conclusion of that court, and hold that the "held-out-of-service" benefits paid to Clarence from the fund in excess of dues paid by him are includible in his gross income for the year 1955.

Petitioners suggest for the first time on brief that at most the payments should be taxed as capital gain but do not say why. This issue was not raised in the pleadings and is not properly before the Court, *Frank Polk*, 31 T.C. 412, affd. 276 F. 2d 601 (C.A. 10, 1960). In any event we find no merit in this suggestion. There was no sale or exchange of a capital asset as required by section 1201, *et seq.*, I.R.C. 1954, and no other provision of the Code is suggested as allowing capital gains treatment for payments such as these.

To reflect the concession of respondent as stipulated,

*Decision will be entered under Rule 50.*