Allan A. Seserman and Charlotte R. Seserman v. Commissioner. Charlotte Seserman and Allan Seserman v. Commissioner.
Seserman v. Commissioner
Docket Nos. 84938, 94343.
United States Tax Court
T.C. Memo 1962-191; 1962 Tax Ct. Memo LEXIS 118; 21 T.C.M. (CCH) 1042; T.C.M. (RIA) 62191; August 10, 1962
Allan A. Seserman, pro se, 19 Milk St., Boston, Mass. J. Frost Walker, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent's determinations of deficiencies in income tax, as follows, are challenged: Docket
Year
No.
Deficiency
1954
94343
$ 587.12
1955
84938
48,235.48
1956
94343
322.61
1957
94343
380.00 The questions remaining are (1) whether the sum of $100,000 paid to petitioner Allan Seserman in 1955 by his employer upon termination of an employment contract is taxable in its entirety as *119 ordinary income in that year; (2) whether the statute of limitations bars the determination of any deficiency for the year 1954; and (3) whether the deficiencies for 1956 and 1957 were arbitrary and without foundation. Findings of Fact Some of the facts have been stipulated. They are hereby found accordingly. Petitioners, husband and wife, filed a joint Federal income tax return for each of the taxable years ended December 31, 1954, 1955, 1956, and 1957 with the district director of internal revenue at Boston, Massachusetts. During the year 1950, petitioner Allan Seserman, hereinafter called petitioner, executed a contract of employment as follows: THIS AGREEMENT entered into this 15th day of May, nineteen hundred and fifty, between CARTER HOTELS MANAGEMENT CORPORATION of 250 West 43rd Street, New York City, New York, hereinafter referred to as "First Party," and ALLAN SESSERMAN [seserman], of 533 Hammond Street, Chestnut Hill, Massachusetts, hereinafter referred to as "Second Party." WITNESSETH: 1. First Party employs Second Party to act as "Vice-President in Charge of Operations" for a period of ten years commencing June 1, 1950 and ending on May 31, 1960. As compensation *120 for said employment, First Party agrees to pay Second Party the sum of twenty-five thousand dollars ($25,000.00) per year, payable in equal monthly installments. 2. Second Party agrees to devote his entire time and to devote himself exclusively to the business of First Party and to exert his best efforts in the performance of his duties. 3. Second Party agrees that during the term hereof he shall not be or become associated with or employed by, directly or indirectly, any other person, company, corporation, business or venture other than First Party without the written consent of First Party. 4. It is agreed that the provisions of paragraphs 2 and 3 hereof and of each of them are of the essence of this contract. 5. It is agreed that Second Party shall be generally in charge of all of the operations of First Party, subject to the directions of the President and the Board of Directors of First Party, and shall include those duties which usually appertain to such employment. 6. It is agreed that in the event that during the term hereof the hotels for which First Party now acts as managing agent are sold and First Party's contracts with those hotels are terminated, then and in *121 that event this contract shall terminate and have no further force or effect and upon such termination hereof First Party shall pay to Second Party the sum of one hundred thousand dollars ($100,000.00). 7. It is agreed that, notwithstanding any other provision hereof and independently of any other provision hereof, First Party may terminate this agreement at any time during the term hereof upon giving Second Party written notice of such termination delivered to Second Party personally or mailed by registered mail to him addressed to 250 West 43rd Street, New York 18, N. Y. and if such notice of termination is given First Party agrees to pay to Second Party the sum of one hundred thousand dollars ($100,000.00). IN WITNESS WHEREOF the parties hereto have executed this agreement the day and year first above mentioned. CARTER HOTELS OPERATING CORPORATION By /s/ Hyman B. Cantor President / First Party. /s/ Allan Seserman / Second Party. During the taxable year ended December 31, 1955, and upon termination of the contract of employment, petitioner was paid $100,000, after deducting therefrom amounts withheld as income tax withholding, by or on behalf of his employer. Petitioners' *122 joint Federal income tax return for the taxable year ended December 31, 1954 was filed on April 16, 1955. On March 5, 1958, before the expiration of the time prescribed by section 6501(a) of the 1954 Code for assessment against petitioners of income tax for the taxable year ended December 31, 1954, the petitioners and respondent executed an agreement pursuant to section 6501(c)(4) of the 1954 Code extending to June 30, 1959 the time within which the respondent might assess against petitioners income tax for the taxable year ended December 31, 1954. On May 15, 1959 and May 17, 1960, similar agreements were executed extending the time to June 30, 1960 and June 30, 1961, respectively. On June 16, 1961, prior to the expiration of the time prescribed in section 6501(a) of the 1954 Code, as extended by the agreements dated March 5, 1958, May 15, 1959, and May 17, 1960, made pursuant to section 6501(c)(4) of the 1954 Code, the respondent by certified mail sent to the petitioners a statutory notice of the determination of deficiency in income tax for the taxable year ended December 31, 1954. The statutory notice of deficiency respecting the taxable year ended December 31, 1954 was timely *123 mailed to petitioners. The lump sum payment of $100,000 received by petitioner in 1955 was paid to him as consideration for the cancellation of his employment contract. Opinion It is impossible to doubt that the sum received by petitioner for the cancellation of his employment contract with some 5 years yet to run was ordinary income, taxable as such as a substitute for what would otherwise have been income earned by him for his personal services. General Artists Corporation, 17 T.C. 1517 (1952), affd. 205 F. 2d 360 (C.A. 2, 1953), certiorari denied 346 U.S. 866. There is nothing in petitioner's brief testimony indicating the contrary. In fact, he testified: "I became Vice President of all then existing companies involved in the hotel operation." And the fact, if it be such, that he received no compensation from his nominal employer prior to the termination of the contract, in spite of its provisions to the contrary, could scarcely alter this conclusion. We have, it is true, found all the facts as requested by respondent because petitioner, who represented himself, filed no brief and, of course, we have no requested findings from him, *124 nor objections to any proposed by respondent. See Rule 35, Tax Court Rules of Practice. But there does not seem to be any real dispute as to the facts and, as we have said, the record supports the findings irrespective of the failure to file a petitioner's brief. The only evidence on the other two issues is the waivers signed by petitioner which show that the 1954 deficiency notice was timely. Since petitioner has the burden of proof, both issues are necessarily to be disposed of in respondent's favor; but it is not clear whether the 1956 and 1957 deficiencies were more than protective alternatives; nor that there may not be an overpayment involved. Both can be taken account of in the recomputation. Decisions will be entered under Rule 50.