KENNETH L. AND BARBARA A. RAMELLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Ramella v. Commissioner
Docket No. 3816-77.
United States Tax Court
T.C. Memo 1979-177; 1979 Tax Ct. Memo LEXIS 347; 38 T.C.M. (CCH) 747; T.C.M. (RIA) 79177; May 8, 1979, Filed Kenneth L. Ramella, pro se. Robert N. Armen, Jr., for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency of $1,521.34 in petitioners' 1974 income tax. Due to concessions by both parties, the sole issue is whether petitioners are entitled to exclude from gross income or deduct as an itemized deduction the amount received by Kenneth L. Ramella upon the termination of his employment. FINDINGS OF FACT Most of the facts have been stipulated and are found accordingly. At the time of filing their petition, Kenneth L. and Barbara A. Ramella were residents of Olmstead, Ohio. Barbara is a party only by virtue of having filed a joint return with her husband. When we hereafter refer to petitioner, we will be referring to Kenneth. From October 1, 1967, through June 15, 1974, petitioner was employed as a printer (Linotype operator) by Dow Jones & Company, Inc. ("Dow Jones") in Cleveland, Ohio. At all times material to this case, Dow Jones in Cleveland was the publisher of The Wall Street Journal (Mid-West Edition). *349 Prior to June 15, 1969, petitioner received periodic compensation from Dow Jones for the work that he performed as a printer. From June 15, 1969, through June 16, 1974, petitioner served as president of the Cleveland Typographical Union No. 53 ("union"). During this period petitioner received periodic compensation from the union for acting as president. Petitioner was not compensated by Dow Jones; however, he continued to maintain his status as an employee. Sometime prior to March 8, 1974, Dow Jones decided to convert its Linotype printing operation to a more highly automatic typesetting operation known as cold-type. As a result of this conversion, Dow Jones found it necessary to lay off 13 printers. The procedure for laying off printers was specified in a labor contract previously executed between the union and Dow Jones, which was in effect during 1974. Generally, under the contract terms if a printer were laid off, he received one week's salary for each year of continuous service performed up to a maximum of eight week's pay. Under the contract, if an advertisement were received in preset type, the printers had to be allowed to reproduce it. No printer could be laid *350 off, however, until the printers responsible under the contract for reproducing advertisements completed their backlog of work. Because Dow Jones intended to terminate 13 printers prior to completion of the reproduction work, the union filed a grievance. The union's grievance was resolved and on March 8, 1974, a "Memorandum of Agreement Concerning Conversion to Cold-Type and Settlement of Grievance Concerning Alleged Reproduction" ("the agreement") was executed by Dow Jones and the union. This agreement provided for an $8,000 payment to each of the 13 printers, including petitioner, who were scheduled to be laid off. The agreement recites that the $8,000 payment represents "supplemental early retirement, retraining allowance and/or supplemental unemployment." This language was included in the agreement at the insistence of petitioner who signed the document on behalf of the union. As far as Dow Jones was concerned, the $8,000 payments represented severance or termination pay. On June 16, 1974, petitioner's employment with Dow Jones terminated. Dow Jones deducted $2,268, including $1,600 for Federal withholding tax and $468 for Federal social security, from petitioner's $8,000 *351 payment. No part of the $8,000 received by petitioner represented a return of his own funds or a distribution from a profitsharing or pension account. Moreover, Dow Jones did not maintain a supplemental unemployment benefit plan during the year in issue. In an effort to provide for his family, petitioner used the net amount received from the $8,000 payment to cover expenses while he was taking courses to become a commissioned real estate salesman. Petitioner is presently employed in this capacity. Petitioner included the $8,000 payment on his joint tax return for 1974 as employee compensation. He then deducted $8,000 as an itemized deduction for unemployment benefits. In his notice of deficiency, respondent disallowed the entire amount of the claimed deduction. Respondent determined that no provision of the Internal Revenue Code of 1954 excludes from gross income or allows a deduction for the $8,000 payment. OPINION The issue for decision is whether petitioner is entitled to exclude from gross income or deduct as an itemized deduction the amount received upon termination of his employment as a printer with Dow Jones and Company ("Dow Jones"). Petitioner contends that *352 the payment represents supplemental unemployment benefits which are deductible from gross income because the funds were used to train petitioner for a new career. In the alternative, petitioner contends the payment is a retirement benefit which he can exclude from income. On the other hand, respondent contends that the payment is includible in gross income and that petitioner is not entitled to a deduction for education expense because the education that petitioner received qualified him for a new trade or business. In support of his contention that the $8,000 payment is includible in gross income respondent relies on the "all inclusive" language of section 61(a)(1) [1] which provides: SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; * * *
The Supreme Court in Commissioner v. Glenshaw Glass Company,348 U.S. 426, 429-430 (1955), *353 rehg. denied 349 U.S. 925 (1955), explained that the term "gross income" [2] is defined in very broad terms: * * * Congress applied no limitations as to the source of taxable receipts, nor restrictive labels as to their nature. And the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted. [Citations omitted.] Accordingly, in determining whether the taxpayers had received payments includible in gross income, the Supreme Court looked to whether the taxpayers realized "accessions to wealth" over which they had "complete dominion" and for which there was no evidence of intent to exclude the payments from gross income. Id. at 431. *354 Here, there is no question that petitioner, by receiving the $8,000 payment, realized an accession to wealth over which he had complete dominion. Petitioner recognizes that there is no provision which excludes from gross income supplemental employment benefits paid by a private employer. See Williams v. Commissioner,35 T.C. 685, 687 (1961). Although petitioner has characterized the $8,000 payment as a supplemental employment benefit, we believe that the payment should properly be characterized as severance or termination pay. First, Dow Jones did not maintain a supplemental unemployment benefit plan during the year in issue. Second, Dow Jones considered the payment as severance or termination pay. Third, the language characterizing the payments as "supplemental unemployment benefits" in the agreement between Dow Jones and the Cleveland Typographical Union No. 53 pertaining to the layoff of 13 printers, including petitioner, was included in the agreement at the insistence of petitioner. Nevertheless, this is a distinction without a difference because supplemental unemployment benefits, as well as severance or termination payments are also includible in gross *355 income. Sec. 1.61-2(a)(1), Income Tax Regs.; Jackson v. Commissioner,25 T.C. 1106 (1956). Furthermore, the $8,000 is taxable as ordinary income in that petitioner has not shown that he was entitled under former section 1240 [3] to report the payment as capital gain.
*356 It is also arguable that a portion of the $8,000 payment received by petitioner upon termination of employment was consideration for the cancellation of petitioner's rights under the existing union contract. Notwithstanding, any amount which may have been received for cancellation of contract rights is fully taxable as ordinary income because it was received as a substitute for what otherwise might be earned by petitioner as compensation. [4]Henry v. Commissioner,62 T.C. 605, 606 (1974); Seserman v. Commissioner,21 T.C.M. 1042, 31 P-H Memo. T.C. par. 62,191 (1962).
*357 Petitioner contends that because he received the payment from Dow Jones upon termination of employment and used the funds for "retraining," he is entitled to deduct the payment. Section 162 allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. However, expenditures made by an individual for education which qualifies him in a new trade or business are not deductible as ordinary and necessary business expenses. Sec. 1.162-5(b)(3), Income Tax Regs.Petitioner, a printer by trade, used the funds in issue to enable him to take courses to become a commissioned real estate salesman. Because this education enabled petitioner to qualify for a new career, the expenses incurred in connection with this training are not deductible as an education expense under section 162. On brief petitioner alleges for the first time that the $8,000 payment represented retirement benefits. There are no facts in the record which support petitioner's contention. Even if we assume that the payment was a retirement benefit, no portion of the payment is excludable because no part of the amount received by petitioner represented *358 a return of his own funds or a distribution from a qualified profit sharing or pension account. See sections 72 and 402. To reflect concessions previously made by respondent, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. The Supreme Court was referring to section 22(a), Internal Revenue Code of 1939, the predecessor of section 61(a). The Court noted that "the definition of gross income [as codified in section 61(a)] has been simplified, but no effect upon its present broad scope was intended." Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 432 (1955), rehg. denied 349 U.S. 925↩ (1955).
3. Section 1240 as in effect during the year in issue provided: SEC. 1240. TAXABILITY TO EMPLOYEE OF TERMINATION PAYMENTS. Amounts received from the assignment or release by an employee, after more than 20 years' employment, of all his rights to receive, after termination of his employment and for a period of not less than 5 years (or for a period ending with his death), a percentage of future profits or receipts of his employer shall be considered an amount received from the sale or exchange of a capital asset held for more than 6 months if-- (1) such rights were included in the terms of the employment of such employee for not less than 12 years, (2) such rights were included in the terms of the employment of such employee before the date of enactment of this title, and (3) the total of the amounts received for such assignment or release is received in one taxable year and after the termination of such employment. Sec. 1240 was repealed by sec. 1901(a)(139) of the Tax Reform Act of 1976, 90 Stat. 1787, for taxable years beginning after December 31, 1976.↩
4. During the year in issue petitioner received periodic compensation from the Cleveland Typographical Union No. 53 for his service as president of that organization. Petitioner did not receive periodic compensation from Dow Jones; however, he continued to maintain his status as an employee of Dow Jones. In light of these facts, we conclude that any portion of the $8,000 payment received from Dow Jones as consideration for the cancellation of petitioner's rights under the union contract was received by petitioner in his capacity as an employee and is therefore in the nature of compensation.↩