937 F.2d 616
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Joe E. FARIS, Mary A. Faris, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.
 No. 89-9010.
 United States Court of Appeals, Tenth Circuit.
 July 23, 1991.
 
 Before BARRETT, BALDOCK and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 Petitioner-appellee Joe E. Faris is a rancher and a real estate broker in southeastern Colorado.[1] In the mid-1970's, petitioner discovered that the United States Army was interested in acquiring a large tract of land in his region for use as a tank training site. Petitioner arranged for a land package deal whereby several ranches, consisting of 220,000 acres, would be offered for sale to the Army, and upon sale petitioner would receive part of the proceeds as compensation for brokering the transaction. All of the agreements, including the one concerning the 47,200 acre Kitch Ranch, granted petitioner a right of first refusal.
 
 
 2
 Petitioner became concerned about preserving the contiguity of the Army land package when the Kitch Ranch owners received another purchase offer for $42.50 per acre with a five-percent commission to be paid to the brokers. Instead of exercising his right of first refusal, petitioner forestalled the offer by negotiating with the owners and their brokers for a three-year option whereby his son, Nicholas H. Faris, and a family friend, Don J. McDavid, could purchase the ranch for $45 per acre. The agreement provided for three annual payments of $100,000 to be applied against the purchase price and granted the brokers a ten-percent commission on the option payments and the ultimate purchase price. The procuring broker in turn agreed to pay petitioner two-thirds of her seventy-five-percent share in the ten-percent commission on both the option payments and the ultimate purchase. In sum, petitioner was to receive one-half of the overall ten-percent commission (two-thirds of procuring broker's seventy-five-percent share in the option payments and ultimate purchase price).
 
 
 3
 After McDavid paid his share of the first two $100,000 dollar option payments, petitioner acquired his interest in the agreement. After paying the last option payment, petitioner and his son exercised the option and purchased the ranch for $2,124,000 (47,200 acres at $45 per acre). The $300,000 option payments were applied against the $2,124,000 total price and the remaining $1,824,000 balance was paid from the proceeds of a $2,000,000 loan from the Federal Land Bank of Wichita (FLBW). In accordance with the agreement, the brokers were paid a ten-percent commission. The procuring broker then remitted $114,000 to petitioner--approximately two-thirds of her seventy-five percent share of the total commission.[2] Petitioner did not report the $114,000 receipt as income, and when he later sold a portion of the ranch to a third party, he reported his basis at $45 per acre. The Commissioner maintains that the $114,000 was a sales commission, and, as such, was gross income.
 
 
 4
 The tax court, after considering testimony regarding the events surrounding the transaction, found that $104,000 of the $114,000 receipt was excess borrowed capital from the $2,000,000 FLBW loan, not a sales commission.[3] In making this determination, the court reasoned as follows:
 
 
 5
 Petitioners could have purchased the Kitch Ranch for $42.50 per acre and a 5-percent commission would have been paid to real estate agents. Under those terms, none of the 5-percent commission would have been channeled to petitioners. Instead, petitioners convinced the seller to accept $2.50 more or $45 per acre with an apparent 10-percent commission, half of which ($2.25 per acre--$45 X .05), was to be channeled back to petitioners. Accordingly, petitioners were not receiving a commission from the third-party-seller, but were instead increasing the price they had to pay in order to generate additional or excess capital from the borrowing on the transaction.
 
 
 6
 .............................................................
 
 
 7
 ...................
 
 
 8
 * * *
 
 
 9
 Petitioners here were entitled to purchase the Kitch Ranch for $42.50 per acre and we find that, in substance, they did pay only $42.50 per acre. The additional amounts, except to the extent found to be part of the ... $10,000 commissions determined above [see supra note 3], represent proceeds of a loan which petitioners remained obligated to repay [the $2,000,000 FLBW loan].
 
 
 10
 Faris v. Commissioner, 56 T.C.M. (CCH) 319, 326 (Sept. 26, 1988) (emphasis supplied) (footnote omitted). In other words, petitioner agreed to pay the sellers a higher gross price on the condition that sellers would pay petitioner an offsetting commission. With this arrangement, the net price would remain roughly the same, but petitioner could borrow more funds from FLBW for use in his business. The tax court found that the substance of this transaction did not amount to gross income under I.R.C. Sec. 61 as interpreted in Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). The Glenshaw Court characterized gross income as including "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Id. at 431. In this case, the tax court found that this transaction did not amount to an accession to wealth because the "commission" represented loan proceeds which would have to be repaid. Faris, 56 T.C.M. at 326. The court correctly stated that loan proceeds are not accessions to wealth and are therefore not gross income. See Commissioner v. Tufts, 461 U.S. 300, 307 (1983).
 
 
 11
 The Commissioner argues that the tax court erred in concluding that the "commissions" involved in this case were loan proceeds. We review de novo because the Commissioner points to legal error, and we agree with the Commissioner's interpretation of the relevant law. Specifically, Hamlin's Trust v. Commissioner, 209 F.2d 761 (10th Cir.1954), stands for the proposition that a taxpayer must accept the tax consequences of the form of transaction which he chooses. In Hamlin's Trust, we stated that "where parties enter into an agreement with a clear understanding of its substance and content, they cannot be heard to say later that they overlooked possible tax consequences." Id. at 765.
 
 
 12
 The option agreement in this case clearly and unambiguously provides for a ten-percent commission to be paid to the brokers, and such commissions are taxable under I.R.C. Sec. 61(a)(1). The fact that petitioner ultimately became the purchaser does not affect the taxability of the commission receipts; commissions received by a broker for real estate purchases made on the broker's own account are considered gross income because they represent compensation for the service of finding a buyer. See United States v. Allen, 551 F.2d 208 (8th Cir.1977); Commissioner v. Daehler, 281 F.2d 823 (5th Cir.1960). See also Commissioner v. Minzer, 279 F.2d 338 (5th Cir.1960) (insurance commission); Ostheimer v. United States, 264 F.2d 789 (3d Cir.) (same), cert. denied, 361 U.S. 818 (1959).
 
 
 13
 On its face, the transaction in this case appears identical to those in the Allen and Daehler, that is, petitioner appears to have received compensation for the service of brokering the transaction. Both parties accounted for the transaction as if it involved a true sales commission. For example, the Kitch Ranch owners reported the gross sales proceeds at $45 per acre and deducted the ten-percent commission as a sales expense. It is uncontroverted that petitioner paid the full $45 per acre price. In return, petitioner received his "commission" from the procuring broker, and he later reported his basis in the property at $45 per acre.
 
 
 14
 The tax court, however, distinguished this case from Allen and Daehler, noting that the substance of this case involved an increase in borrowed funds whereas the latter cases involved true accretions to the wealth of the taxpayers by virtue of compensation for services rendered. To arrive at this conclusion the tax court had to ignore the plain language of the option agreement and rely on petitioner's explanation regarding his true intent. In essence the tax court rewrote the agreement to effect petitioner's true intention of borrowing excess money. In so doing, the court ignored not only the form of the agreement, but also the actual transaction including the transfer of funds among the petitioner, the sellers and the brokers. We think that Hamlin's Trust presents a legal barrier preventing petitioner from controverting the plain, unambiguous form of the transaction. Petitioner, as far as we can discern from the record, entered into the agreement with an understanding of its content; he may not now controvert the agreement simply because he "overlooked possible tax consequences." Hamlin's Trust, 209 F.2d at 765. We therefore REVERSE and REMAND this case to the tax court for a determination of petitioner's deficiency relating to the Kitch Ranch "commission."[4]
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Petitioner-appellant Mary A. Faris is involved in this case solely by virtue of the joint tax returns filed by her husband, Joe Faris
 
 
 [2]
 Although $114,000 differs from the exact calculation of the amount owed petitioner per the agreement, the tax court accepted the figure as accurate
 
 
 [3]
 The remaining $10,000 represented the commissions petitioner was to receive for two of the $100,000 option payments. The tax court found that these commissions were accretions to income to petitioner, and were therefore gross income. The parties do not dispute this determination
 
 
 [4]
 The tax court noted that petitioner was engaged in a partnership with his sons, J. Ray Faris, Michael A. Faris and Nicholas H. Faris, and that the activities surrounding the Kitch Ranch transaction were attributable to the partnership. Ray, Michael, Nicholas and their wives were all party to this case in the tax court, but only the petitioner appealed. On remand the tax court is instructed to determine the portion of the Kitch Ranch commission which is attributable to petitioner