James M. Hunley and Alice Josephine Hunley v. Commissioner.
Hunley v. Commissioner
Docket No. 3813-64.
United States Tax Court
T.C. Memo 1966-66; 1966 Tax Ct. Memo LEXIS 215; 25 T.C.M. (CCH) 355; T.C.M. (RIA) 66066; March 30, 1966
*215 Petitioner James M. Hunley, a prominent Southern Illinois businessman, purchased shares of an Illinois life insurance company in 1959 for a price of $2 per share at a time when the fair market value of each share was $2.81. Respondent included the bargain element in petitioners' income in 1959. Held: The bargain element was not includable in gross income as compensation for services nor does the bargain element in the purchase of the shares, in and of itself, result in realization of income. F. William Human, Jr., for the petitioners. James F. Kennedy, for the respondent. *216 TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1959 in the amount of $688.51. The sole issue is whether the difference between the fair market value and the cost of certain stock acquired by petitioner in 1959 constituted gross income in that year. Findings of Fact Some of the facts in this case have been stipulated. The stipulation of facts, together with the exhibits thereto, is incorporated herein by this reference. Petitioners were husband and wife during 1959 and resided in Olney, Illinois. They filed a joint Federal income tax return prepared on the cash method of accounting with the district director of internal revenue, Springfield, Illinois. Alice Josephine Hunley is a party hereto only by virtue of having filed a joint return with her husband. Any subsequent reference to petitioner shall mean James M. Hunley. During the year in issue, petitioner was the president and general manager of a corporation engaged in the production of ready-mix concrete at three plants in Illinois. He was considered a successful businessman. State Life of Illinois (hereinafter *217 referred to as State Life) was a life insurance company organized in Illinois in January 1959. On January 27, 1959, there were 600,000 shares of its common stock outstanding, all of which were held by Future Investments, Inc., an Illinois corporation. Future Investments, Inc., had acquired the shares for $.30 each. In a prospectus dated January 27, 1959, State Life offered to sell to the general public 150,000 of its unissued shares at $3.75 per share. Future Investments, Inc., was to act as State Life's agent for this purpose. The prospectus stated that the management of Future Investments, Inc., "intends to use a substantial portion of the Life Insurance Company's stock for which it subscribed to secure experienced and outstanding home office personnel and agency connections which will be of value and continuing benefit to the State Life of Illinois." Petitioner did not fall within the categories of home office personnel and agency connections. In early March 1959, one Joseph L. Sunderland (hereinafter referred to as "Sunderland"), a stock salesman for Future Investments, Inc., and the agency director for State Life in southern Illinois, caused 2,500 common shares of State Life *218 to be sold to petitioner at a price of $2 per share. It is stipulated that the fair market value of such shares on the date of purchase was $2.81. [1]
Sunderland offered the stock to petitioner at less than its fair market value because he considered petitioner a "center of influence." As used in the life insurance industry, the term "center of influence" refers to an individual of prominence in the insurance company's area of operation who could be helpful to the company and its employees in recommending or evaluating prospective insurance salesmen, suggesting prospects for policies, and, in the case of a beginning company, suggesting prospective subscribers for the company's stock. Because of the prominence of a "center of influence" in a particular area, the company may ask that he allow publication of the fact that he is a stockholder or policyholder or both. Neither at nor about the time of purchase nor prior thereto was petitioner told that he was a "center of influence" or *219 that it was hoped or expected that he would render any assistance to anyone (which shall for all purposes herein be deemed to include, but not be limited to, State Life, Future Investments, Inc., and Sunderland). At no time did petitioner expressly or impliedly agree to render any services or to otherwise assist anyone for the bargain element in the purchase. At no time did petitioner render or intend to render any services or otherwise assist anyone for such bargain element. At the time of the bargain purchase, petitioner was not told that the stock was being offered to him at a preferred price nor did he know that State Life stock was being sold to others. At that time there was no market where quotations on the stock could be obtained. Some time after the purchase of the stock, State Life by mail asked petitioner to permit publication of his name and photograph in the company's monthly periodical. Petitioner consented and his picture was so used. In the notice of deficiency, respondent determined that the difference between the fair market value of the shares on the date of purchase and the cost thereof constituted ordinary income to petitioner in 1959. Ultimate Findings *220 of Fact Petitioner neither knew nor should have known that he was purchasing the State Life stock at less than its then fair market value or that he might be called upon to render assistance by reason of his purchase. There was no reasonable basis for an expectation by Sunderland or anyone that, by reason of the purchase, petitioner would render any assistance. The request for and the use of petitioner's picture was grounded on his status as a stockholder at the time of the request and not on the fact of the bargain purchase. Opinion The sole issue is whether the admitted bargain element contained in petitioner's purchase of the State Life shares constituted gross income to him in 1959 under section 61 of the Internal Revenue Code of 1954. Petitioner contends that the bargain element is income to him in 1959 only if his services were the consideration for receipt of the bargain and that the evidence does not support a finding that he agreed to or did in fact render any such services. Respondent asserts that petitioner did agree to provide services as consideration for the bargain, contending that there was at the time of purchase an implied understanding *221 between petitioner and Sunderland that petitioner would assist State Life in the future. He points to State Life's subsequent use of petitioner's photograph in a company publication as evidence of such an understanding. On the basis of the testimony (notably that of petitioner, which was wholly believable), we have found as facts that petitioner was not asked to render any services at the time he purchased the stock, that petitioner could not reasonably have known that it was hoped or expected that he would render any services, and that he never did render any services. See Delbert B. Geeseman, 38 B.T.A. 258, 264 (1938). Petitioner's furnishing of his picture, at a subsequent date, for use in a State Life publication stemmed from his status as a stockholder and not from the bargain purchase. We therefore conclude that petitioner did not receive the bargain element of the purchase as compensation for services. Respondent, however, argues that under the rationale of Commissioner v. Duberstein, 363 U.S. 278 (1960), reversing 265 F. 2d 28 (C.A. 6, 1959), affirming a Memorandum Opinion of this Court, Sunderland's mere hope of obtaining petitioner*s *222 future assistance is sufficient to bring the bargain element within the grasp of section 61. He relies on the following language from the Supreme Court's opinion (363 U.S. at pp. 291-292): * * * [The Tax Court] * * * was warranted in concluding that * * * the transfer of the Cadillac * * * [was] a recompense for Duberstein's past services, or an inducement for him to be of further service in the future. * * * [Emphasis added.] While it is true that Duberstein requires us to look primarily to the payor's intention, we cannot ascribe to Sunderland or anyone else a reasonable expectation of obtaining petitioner's assistance in the future. Where one person seeks to "induce" another to take action, the hope or expectation on the part of the former must find support in the existence of knowledge, or a reasonable basis for inferring such existence, on the part of the person being induced. In Duberstein, the taxpayer had actually rendered the services and knew or reasonably should have known that he was being compensated. Moreover, as previously pointed out, petitioner herein never rendered any assistance, nor could he have reasonably expected to be called upon for *223 such assistance in the future by reason of his purchase. He neither knew nor should have known that he was getting a bargain purchase. Consequently, the element of knowledge or inferred knowledge - the essential ingredient of "inducement" - is not present and respondent's reliance on the above-quoted language in Duberstein misses the mark. We hold that the mere hope for future assistance, not corseted by any understanding or reasonable basis for inferring an understanding with respect to the rendition thereof, is insufficient to glue the label of compensation to the bargain element herein. Cf. Fred Pellar, 25 T.C. 299 (1955). Finally, respondent suggests that the bargain element is nevertheless includable in petitioner's gross income on the ground that he was enriched and that such enrichment per se constitutes a taxable accretion of wealth. Respondent relies upon Commissioner v. Glenshaw Glass Co. 348 U.S. 426 (1955), and General American Investors Co. v. Commissioner, 348 U.S. 434 (1955), to support the proposition that any accretion of wealth *224 not specifically excluded by the Internal Revenue Code [2] automatically constitutes income includable under section 61. As the Supreme Court has stated in Commissioner v. Duberstein, supra, at pp. 284-285, "the governing principles are necessarily general * * * and * * * the problem is one which, under the present statutory framework, does not lend itself to any more definitive statement that would produce a talisman for the solution of concrete cases." We should sketch the picture but we should not predetermine the colors. Although Glenshaw Glass and General American Investors Co. are factually dissimilar to the instant case, [3] we are not unmindful of the fact that those cases represent the final step in the evolution of an all-inclusive concept of the term "income" by the Supreme Court. Compare the earlier attitude of the Court set forth in Gould v. Gould, 245 U.S. 151 (1917). *225 In Glenshaw Glass, supra, at pp. 430-431, the Court made clear that the characterization of income in Eisner v. Macomber, 252 U.S. 189, 207 (1920), as "the gain derived from capital, from labor, or from both combined," while serving a "useful purpose," "was not meant to provide a touchstone to all future gross income questions." It added: Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. * * * We would do violence to the plain meaning of the statute and restrict a clear legislative attempt to bring the taxing power to bear upon all receipts constitutionally taxable were we to say that the payments in question here are not gross income. * * * [Id. at pp. 431-432.] Similar language was used in General American Investors Co., supra, at p. 436: * * * As in Glenshaw, the taxpayer realized the money in question free of any restrictions as to use. The payments in controversy were neither capital contributions nor gifts. * * * In accordance with the legislative design to reach all gain constitutionally taxable unless specifically excluded, we conclude that the petitioner *226 is liable for the tax * * *. Admittedly, this is broad language. But we conclude that it is not applicable to the case at hand. Neither in Glenshaw Glass nor General American Investors did the Supreme Court advert to Palmer v. Commissioner, 302 U.S. 63 (1937), where it had held that an issuance to shareholders of rights to acquire stock did not per se constitute income in the form of a dividend to the extent of the difference between the price paid for the stock and its value on the date of acquisition. In so holding, the Court stated, at pp. 68-69 - profits derived from the purchase of property, as distinguished from exchanges of property, are ascertained and taxed as of the date of its sale or other disposition by the purchaser. Profit, if any, accrues to him only upon sale or disposition, and the taxable income is the difference between the amount thus realized and its cost, * * *. It follows that one does not subject himself to income tax by the mere purchase of property, even if at less than its true value, and that taxable gain does not accrue to him before he sells *227 or otherwise disposes of it. The decision of Commissioner v. LoBue, 351 U.S. 243 (1956), decided only slightly more than one year after Glenshaw Glass and General American Investors, is evidence that the Palmer principle was not vitiated by those cases. In holding that the exercise of a stock option at a bargain price by an employee gave rise to taxable income, the Court stated at p. 248: * * * It is true that our taxing system has ordinarily treated an arm's-length purchase of property even at a bargain price as giving rise to no taxable gain in the year of purchase. See Palmer v. Commissioner of Internal Revenue, 302 U.S. 63, 69. But that is not to say that when a transfer which is in reality compensation is given the form of a purchase the Government cannot tax the gain under section 22(a). The transaction here was unlike a mere purchase. * * * [Emphasis added.] [4]
*228 We do no more than hold that these decisions do not require per se the inclusion in income of the bargain element in a purchase. The instant case does not lie within the frontiers to which the pervasive tentacles of the revenue collector were held to extend by Glenshaw Glass and General American Investors. Petitioner's position herein was simply that of an investor who gets in on the ground floor of a new enterprise and hopes that his investment turns out to be a tenstrike. It is enough that the Federal fisc will be entitled to claim its share as income tax when and if petitioner disposes of his stock at a profit. Decision will be entered for the petitioners. Footnotes
1. The parties did not choose to enlighten the Court as to why stock being sold to the general public at $3.75 per share should be valued at $2.81, or only $.81 above the price paid by petitioner.↩
2. Petitioner understandably concedes on brief that the bargain did not constitute a gift. See Commissioner v. Duberstein, 363 U.S. 278↩ (1960). Nor does the bargain fit within any of the other specific exclusions from gross income.
3. The former case involved punitive damages for fraud and antitrust violations and the latter "insider profits" as determined by sec. 16(b) and sec. 30(f) of the Securities Exchange Act of 1934 and the Investment Company Act of 1940, respectively.↩
4. The Government, citing Palmer, made this precise distinction in its brief before the Supreme Court. See Brief for Petitioner, p. 26. The conclusion in Palmer has been justified on four grounds: (1) The administrative burden placed on the respondent, since he would have to pierce the veil of all purchases, including those at arm's-length, to determine whether a bargain was present; (2) the difficulty in measuring at the time of purchase the amount of any bargain when compared to the ease of measurement of gain on disposition; (3) the amount of gain at the time of purchase may be more or less than the gain realized on disposition; and (4) payment of tax on any income should be deferred until the bargain element has been reduced to cash or otherwise disposed of. See Magill, Taxable Income 140 (Rev. ed. 1945); Haskell and Kaufman, "Taxation of Imputed Income," 17 National Tax J. 232, 235-36 (1964); Wright, "The Effect of the Source of Realized Benefits upon the Supreme Court's Concept of Taxable Receipts," 8 Stan. L. Rev. 164, 183↩ (1956).