DENVERS T. NATTRASS and SYLVIA P. NATTRASS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nattrass v. Commissioner
Docket No. 6686-72
United States Tax Court
T.C. Memo 1974-300; 1974 Tax Ct. Memo LEXIS 15; 33 T.C.M. (CCH) 1389; T.C.M. (RIA) 740300; December 4, 1974, Filed. *15 Petitioner received a payment from Holdings, a corporation that owned 85 percent of Airways - petitioner's former employer. Claiming this payment to be a gift, petitioner did not report this payment as income on his personal tax return. Held: This payment is compensation and should be included as income on petitioner's tax return. George G. Graham, for the petitioners. Paul R. Stanton, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Judge: The respondent determined a deficiency in petitioners' federal income tax for the taxable year 1970 in the amount of $938.11 *16 and an addition thereto under section 6653(a), Internal Revenue Code of 1954[1], of $46.90. Certain issues having been conceded the sole remaining issue is whether the $3,150.03 payment received by Denvers T. Nattrass in 1970 from Bahamas Airways (Holdings) Limited is to be characterized as a nontaxable gift under section 102 or as taxable income under section 61. Petitioners have not challenged the applicability of the negligence penalty determined by respondent to be due under section 6653(a) in either their petition or brief, and we deem this issue to have been conceded. All of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. By joint motion of the parties, this case was submitted for decision under Rule 122 of this Court's Rules for Practice and Procedure. Petitioners Denvers T. Nattrass (hereinafter petitioner) and Sylvia P. Nattrass were residents of South Miami, Florida at the time they filed their petition herein. Petitioners *17 filed their 1970 joint income tax return with the southeast service center, Chamblee, Georgia. Bahamas Airways (Holdings) Limited (hereinafter Holdings) is a nonoperating holding company which owns 85 percent of the total outstanding shares of Bahamas Airways, Limited (hereinafter Airways). Airways is a foreign corporation which operated, among other places, between the Bahama Islands and the Miami International Airport, Florida. Airways employed petitioner in connection with its operations at Miami International Airport from January 12, 1959, until its entire operations were completely ended October 1, 1970. As of the moment of discontinuance of operations the employer-employee relationship ceased to exist. On October 12, 1970, a complaint was entered in United States District Court in and for the Southern District of Florida, Miami Division, by the International Association of Machinists and Aerospace Workers (hereinafter IAMAW) against Airways. IAMAW, an unincorporated association and a labor organization, was the authorized collective bargaining agent for most of Airways' former employees. While employed at Airways, petitioner was not a member of the IAMAW or any other *18 union. The complaint alleged that Airways unilaterally ceased operations and announced its liquidation with limited severance benefits to its severed employees, which benefits were not the full and proper benefits provided for under agreements entered into in October, 1969 between IAMAW and Airways. The complaint requested appropriate action to prevent Airways from removing its assets from the jurisdiction of the court, and to require Airways to honor its obligations under the existing collective bargaining agreements. On October 16, 1970, the court affirmed its jurisdiction in the matter and issued a preliminary injunction and the appointment of a receiver to maintain Airways' assets so that the rights of the IAMAW members might be protected. On November 2, 1970, Airways' corporate shareholder, Holdings, submitted a written offer to make certain payments to the former employees of Airways upon withdrawal of proceedings instituted against Airways by IAMAW. This offer was accepted by IAMAW. On November 5, 1970, upon joint motion of IAMAW and Airways, the court issued a final judgment of dismissal and dissolution of injunction, incorporating therein the agreement made between *19 IAMAW and Airways. In its order the court stated that it was satisfied that the interests of the IAMAW members and the other United States employees of Airways would be protected. Pursuant to the court's order and the underlying agreement, Holdings made payments to all the former employees of Airways in varying amounts based on salary and longevity of service. Petitioner received $3,150.03 from Airways which was not reported on petitioners' 1970 income tax return. Respondent's deficiency notice determined that this payment should be included in income as follows: From records and information available, it has been determined that you received additional income in the amount shown from the sources indicated. The sole issue for our determination is the characterization of the $3,150.03 payment as either taxable income under section 61 or a nontaxable gift under section 102. Section 61(a) defines gross income as being "all income from whatever source derived" except as otherwise provided. This statutory provision has repeatedly been given the broadest possible interpretation. Commissioner v. LoBue, 351 U.S. 243, 246 (1956), Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955). *20 One such exception is found in section 102 which excludes "the value of property acquired by gift". This exclusion, if applicable, is complete. "[There] can be no such thing under the statute as a taxable gift." Bogardus v. Commissioner, 302 U.S. 34, 40 (1937). To make this determination we must apply the facts in this case to the statute as it has been interpreted. In Commissioner v. Duberstein, 363 U.S. 278, 285-286 (1960) the Supreme Court said: The course of decision here makes it plain that the statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. * * * And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature * * * *21 it is not a gift. And, conversely, "[where] the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." * * * A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," * * * "out of affection, respect, admiration, charity or like impulses". * * * And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention". * * * "What controls is the intention with which payment, however voluntary, has been made." * * * [citations and footnotes omitted] Petitioner's argument is based entirely on the Supreme Court's opinion in Bogardus, supra, from which he has quoted long passages in his brief. In Bogardus, supra, the Court found the payments to be an act of "spontaneous generosity". Bogardus, supra at 42. We do not find the payment in this case to be similarly motivated, nor do we find it meets the standards as expressed by the Supreme Court in Duberstein, supra.
Holdings, as an 85 percent owner of Airways' outstanding stock, was entitled to that share of *22 Airways' assets when Airways ceased business operations. The distribution of these assets was halted by the issuance of a preliminary injunction and the appointment of a receiver as a result of the IAMAW suit. It seems clear that Holdings' efforts towards a settlement and the subsequent payments pursuant to the ultimate agreement were made with the purpose of facilitating the distribution of Airways' assets. In lifting the restrictions on Airways' assets, the District Court felt secure that this agreement would protect the rights of the union members and the other employees of Airways. Petitioner received his payment under the terms of this agreement. Under these circumstances we believe Holdings' intention is clear and that the payment was hardly motivated by a "detached and disinterested generosity". Commissioner v. LoBue, supra at 246.
In Bogardus, supra, the Supreme Court noted that "It nowhere appears in the record that full compensation had not been made for these services". Bogardus, supra at 42.As an employee of Airways petitioner was entitled to severance benefits which was a part of his compensation package. As such this payment *23 should be included by petitioner as compensation income under section 61(a). Decision will be entered for the Respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated. ↩