T.C. Memo. 1997-137

UNITED STATES TAX COURT

JOHN LEE BERST & CAROLYN ANN PACE, a.k.a.
CAROLYN ANN BERST, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5346-95.                          Filed March 17, 1997.

John Lee Berst and Carolyn Ann Pace, pro sese.

<u>Margaret A. Martin</u>, for respondent.

MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined a $40,693
deficiency in petitioners' 1992 Federal income taxes.  The
parties have stipulated with respect to a number of issues no
longer in controversy.  The only remaining issue relates to the
includability in gross income of an incentive payment of $16,200

made by State Farm Insurance Company to petitioner Carolyn Ann Berst to encourage her to settle her sex discrimination claim in a class action suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. The facts have been stipulated. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners, husband and wife, are John Lee Berst and Carolyn Ann Pace, a.k.a. Carolyn Ann Berst. References to petitioner in the singular will be to petitioner wife. When the petition in this case was filed, petitioners resided in Truckee, California.

Petitioner was a claimant in the class action litigation filed on June 1, 1979 in the District Court for the Northern District of California entitled Kraszewski v. State Farm Gen. Ins. Co.. On April 29, 1985, the District Court issued Findings of Fact and Conclusions of Law, and ruled that State Farm was liable for gender discrimination. 38 Fair Emp. Prac. (BNA) Cas. 197 (N.D. Cal. 1985) The next year, the District Court issued an order requiring hearings to determine individual liability and damages. Kraszewski v. State Farm Gen. Ins. Co., 41 Fair Empl. Prac. (BNA) Cas. 1088 (N.D. Cal. 1986) Following the order, the litigants reached agreements with respect to all issues concerning the distribution of monetary relief. These agreements

are set forth in a "Consent Decree Regarding Monetary Relief, Instatement Relief, and Notice".

Among other things, the consent decree made provision for the claimants to litigate the amount of damages awardable under the decree. However, such damages were to be limited to "(1) back pay, (2) front pay, (3) prejudgment interest, (4) postjudgment interest, and (5) reasonable attorney fees and costs."

The District Court referred the litigation to Judge Eugene Lynch as mediator. After September 24, 1991, under Judge Lynch, State Farm and class action counsel began negotiations to reach a possible settlement of the claims of individual litigants. As a result of the negotiations, a Master Settlement Agreement was reached on January 17, 1992. It provided a formula for the computation of damages that State Farm would offer to each claimant, who was free to accept or reject such offer.

On or about January 17, 1992, the District Court provided petitioner with a document entitled "Communication of State Farm's Settlement Offer", accompanied by a "Summary of Terms of State Farm's Settlement Offer", which had been reviewed and approved by Judge Lynch. Pursuant to the foregoing settlement offer, State Farm offered petitioner $139,688 to release her claims against State Farm. The offer was conditional upon acceptance of State Farm's offers by at least 87.5 percent "of the 821 Final Claimants represented by [class action counsel] to

whom offers of that type had been made." The $139,688 represented 37 percent of the full Consent Decree value of Mrs. Berst's claim. Also, State Farm's offer provided that petitioner would automatically share in any "incentive cash". This was an additional amount computed pursuant to a formula based upon the number of percentage points by which the acceptance of State Farm's offers exceeded 90 percent. The maximum amount of such incentive payment under the formula was $18,000. The offer was required to be accepted by March 20, 1992.

Petitioner accepted the offer, and State Farm issued a $155,888 check payable to petitioner and class action counsel. That check represented the $139,688 amount of the settlement of petitioner's claim, and the remaining amount of $16,200 accounted for the incentive payment.

On their 1992 return, petitioners did not include any of the $139,688 settlement amount or any of the $16,200 incentive payment in their gross income. Petitioners have since conceded that the settlement amount of $139,688 is taxable, a concession plainly required by United States v. Burke, 504 U.S. 229 (1992). The only matter remaining for consideration is whether petitioners may exclude the $16,200 incentive payment from income.

Unless otherwise provided, section 61(a) includes in gross income "all income from whatever source derived". Section 102(a)

excludes from gross income "the value of property acquired by gift".  Property is considered a gift if given in a spirit of "'detached and disinterested generosity'".  Commissioner v. Duberstein, 363 U.S. 278, 285 (1960) (quoting Commissioner v. Lo Bue, 351 U.S. 243, 246 (1956)).  The intent of the transferor controls the characterization of the property.  Id. at 285-286.

Petitioners argue that the incentive payment was a gift. They rely on the language contained in the Communication of State Farm's Settlement Offer that states that "you will automatically share in any Incentive Cash".  Petitioners contend that Mrs. Berst had no control over what the other claimants would do, and that she was given the incentive payment with no obligation on her part.  As stated in petitioners' brief:

> There were no services performed, no conditions placed upon it [the incentive payment], and it was not bargained for.  * * *  State Farm would not have decided to pay each claimant an extra $16,200 on its own.

State Farm's motive for making the incentive payment was far from "detached and disinterested generosity".  Its relationship with petitioner was, at best, adversarial.  State Farm was attempting to settle its case with petitioner as quickly as possible.  Contrary to petitioners' contention, State Farm paid the extra amount because, by inducing settlement of the claims, it paid only a percentage of the "value" of the claims.  In petitioner's case alone, the full "value" of her claim was $374,078.  Her settlement represented 37 percent of that amount,

$139,688. Offering up to $18,000 to save potentially hundreds of thousands of dollars indicates self-interest, not disinterest.

As for petitioners' contention that no conditions were placed upon the incentive payment, the full quotation from the Communication of State Farm's Settlement Offer reads, "In addition, if you accept this offer you will automatically share in any Incentive Cash payable as described in Paragraph (2) below." (Emphasis added.) Petitioner was not eligible to receive the incentive cash unless she signed the Release, which protected State Farm against future claims. Her signing of the Release was the consideration for the incentive payment. It was thus a bargained-for exchange.

Petitioners also contend that since there is no body of case law that includes incentive payments in income, petitioner's incentive payment should be excluded. To the contrary, section 61(a) is construed broadly so that, except for those items specifically exempted, all income is subject to tax. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955). Since there is no specific exemption under which this payment could be excluded, it must be included in gross income.

Petitioners advance other arguments which we find to be without merit. Due to concessions by the parties,

Decision will be entered

under Rule 155.