WILLIAM G. McCONNELL AND EUGENIA F. McCONNELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McConnell v. Commissioner
Docket No. 22100-86
United States Tax Court
T.C. Memo 1988-307; 1988 Tax Ct. Memo LEXIS 337; 55 T.C.M. (CCH) 1284; T.C.M. (RIA) 88307; July 21, 1988
Henry M. Ekkers, for the petitioners; William G. McConnell, pro se. Russell F. Kurdys, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $ 7,306 in petitioners' 1982 income tax. After concessions, the only issue remaining for decision is whether petitioners are entitled to deduct under section 170[1] their allocable portion of the cost of constructing certain streets and sanitary sewers which were transferred in 1982 to the Township (now city) of Hermitage, Pennsylvania. *338 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and the exhibits attached thereto are incorporated herein by reference. Petitioners, husband and wife, resided in Sharon, Pennsylvania, at the time their petition was filed. They filed a joint federal income tax return for 1982 with the Internal Revenue Service Center at Philadelphia. Hereinafter references to petitioner in the singular are to William G. McConnell. He is a farmer, real estate developer and an attorney who during 1982 was a member of the law firm serving as solicitor for Hermitage a political subdivision of Pennsylvania with the meaning of section 170. The streets and sewers involved in this case were constructed by petitioner and other members of his family during 1979 through May of 1982. Petitioner's allocable portion of their cost was $ 27,007. They were constructed on part of a 220-acre farm originally purchased during the 1940's by petitioner's father. Title to the farm was taken at purchase in the name of the father, George F. McConnell; and his two sons, William G. McConnell (petitioner) and G. Thomas McConnell; and his two daughters Martha Sue McConnell *339 Beezer and Mary Eleanor Milheim. Prior to about 1976, parts of the farm had been subdivided and other parts had been sold off as lots on certain roads passing through or adjacent to the original farm. Furthermore, in 1974, a preliminary subdivision plan for a part of the property had been submitted to Hermitage. The plan included certain streets and sewers. In 1976, the father of petitioner conveyed his 20% undivided interest in the remaining land to petitioner and his brother. Thereafter petitioner and his brother had a 30% undivided interest in the property while the two sisters each had a 20% undivided interest. In 1979, petitioner and his siblings generally agreed to proceed to develop that portion of the subdivision in which the instant streets and sewers are located. In reaching their agreement it was understood: (1) that under an applicable ordinance of Hermitage title to the streets and sewers could be retained by them as their private property by noting the final plat "Not Offered for Dedication;" and (2) that in the absence of such a notation the streets and sewers would be open to public use. Pursuant to their plan to develop part of the property as a subdivision, *340 petitioner and his siblings constructed during 1979 through 1982 about 1,200 to 1,400 feet of streets and sewers. The streets not only provided access to the lots which fronted thereon but also provided access to about 40 acres of undeveloped property owned by petitioner and his siblings which adjoined the subdivision to the east and which they planned to develop at some point in the future. When deciding whether or not to dedicate the streets and sewers to Hermitage, petitioner and his co-owners perceived as an advantage to private ownership their right to restrict access to the streets and sewers and to avoid control by the city of their use. Petitioner and his co-owners were also aware that: (1) construction of the streets and sewers would enhance the market value of their remaining property by allowing them to sell residential lots in the subdivision and to have access to their adjacent undeveloped land; and (2) the transfer of the completed streets and sewers to the city would relieve petitioner and his co-owners from the responsibility of maintaining the streets and sewers and from any liability for failing to maintain them. The developers understood, however, that if they *341 retained title their responsibility and liability with respect to the streets and sewers would have been transferred to the adjoining lot owners as the lots were sold. Five years after title to the streets and sewers was transferred to the city only five lots had been sold in the subdivision. Petitioner and his siblings still owned the balance; and to the date of trial still provided limited maintenance to the streets and sewers at the request of the purchasers of the lots in the subdivision. The dedication of the streets and sewer lines was formally accepted by Hermitage in resolutions adopted on December 22, 1982. On their income tax return for 1982 petitioners reported a contribution to Hermitage in the amount of $ 27,007 of which $ 17,952 was deducted in 1982. The deduction was disallowed by respondent as failing to meet the requirements of section 170. OPINION The issue in this case is whether petitioner's dedication of the streets and sewer lines to Hermitage, qualifies as a charitable contribution under section 170.[2]As used in section 170, the phrase "charitable contribution, *342 " is synonymous with the word "gift." DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). A gift is the result of a "detached and disinterested generosity." Commissioner v. Duberstein,363 U.S. 278, 285 (1960); Commissioner v. LoBue,351 U.S. 243, 246 (1956). If a transfer is motivated by some anticipated benefit to the donor beyond the mere satisfaction flowing from the performance of a generous act, the transfer does not constitute a gift. DeJong v. Commissioner, supra.Furthermore, no charitable deduction is allowable where a taxpayer transfers part of his property with the intention of obtaining a direct or indirect benefit in the form of enhancement to the value or the use of his remaining property. Sutton v. Commissioner,57 T.C. 239, 243 (1971). *343 The burden of proof is on petitioner to show that the transfer of the interest in the streets and sewers constituted a charitable contribution. Rule 142(a); New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Welch v. Helvering,290 U.S. 111 (1933). Petitioner admits that the construction of the streets and sewer lines enhanced the value of the remaining property. He contends, however, that the subsequent transfer of the completed streets and sewers to the city did not affect the value of the remaining property. Respondent contends that the subsequent transfer benefited petitioner by (1) relieving him and his co-owners from the future maintenance of the streets and sewer lines or any liability for failing to do so, and (2) further increasing the value of their adjoining property. Petitioner claims that even if he and his co-owners had retained the streets and sewer lines, their maintenance responsibilities as well as any liability attendant to the private ownership of the streets and sewers would have been passed on to the purchasers of the residential *344 lots in the subdivision. In such case, however, petitioner would have admittedly remained responsible for some maintenance until all of the lots of the subdivision were sold. In fact, petitioner testified that up to date of trial he continued to perform maintenance on the streets even though he is under no legal compulsion to do so and the legal duty to maintain the streets and sewers rests with Hermitage. Petitioner also claims that turning the streets and sewer lines over to the city actually decreased the value of the lots in the subdivision. We are unable to agree; and even if we were, the lots are not the only property whose value is affected. The 40 acres of undeveloped land lying to the east of the subdivision were afforded additional access by the dedication of the public streets and petitioner's interest in such land was increased in value by such access. From the record as a whole we are satisfied that petitioner transferred his interest in the streets and sewers to the city in order to avoid responsibility for future maintenance and to enhance the value of his interest in the remaining property. See Wolfe v. Commissioner,54 T.C. 1707 (1970). We *345 conclude, therefore, that petitioner's conveyance to Hermitage of his interest in the streets and sewers did not constitute a charitable contribution within the meaning of section 170.[3]
Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. Section 170 provides in relevant part as follows: (a) Allowance of Deduction. -- (1) General Rule. -- There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. (c) charitable Contribution Defined. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes. ↩
3. Because of our conclusion, we need not consider respondent's alternative argument that petitioner's cost of construction is a nondeductible capital expenditure incurred to permanently improve the surrounding property. ↩